**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

TR;
MELANIE REILLY; and
SHANE REILLY
    *Plaintiffs,* §

    V.                                      CIVIL ACTION NO.

THE SCHOOL DISTRICT OF LEE
COUNTY, FLORIDA; THE SCHOOL
BOARD OF LEE COUNTY, FLORIDA;
STEVEN CATO, KYLE BURCHFIELD;
ALEX CARCIOPPOLO; ROBERT
HINSON; CHRISTOPHER CHAPELL;
ROBERT BUTZ; and CHRISTOPHER S.
BERNIER, Ph.D.

                                      **JURY TRIAL DEMANDED**

    *Defendants.*

## <u>PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs TR, Melanie Reilly, and Shane Reilly, filing their Original Complaint against Defendants, THE SCHOOL DISTRICT OF LEE COUNTY, FLORIDA; THE SCHOOL BOARD OF LEE COUNTY, FLORIDA; Steven Cato, in his official capacity; KYLE BURCHFIELD, in his official capacity; ALEX CARCIOPPOLO, in his official capacity; ROBERT HINSON, in his official capacity; CHRISTOPHER CHAPELL, in his official capacity; ROBERT BUTZ, in his official capacity; and CHRISTOPHER S. BERNIER, Ph.D, in his official capacity.

In support thereof, Plaintiffs allege the following:

1

## INTRODUCTION

1. The events described in this complaint burst to light with the purposeful sending of a blatantly racist text by an adult agent of the School District entrusted with the care of TR, a student-athlete, as well as other minor children. This text both revealed and perpetuated a culture of long-seated biases on the basis of race and color, which permeated the educational environment in the Lee County School District. After this discrimination was revealed, the defendants did not take direct action to address it. Instead, they insisted that clearly related behaviors were unrelated and failed to protect the actual victims of this discrimination. This group includes, most notably, the plaintiff TR, who was a minor child under the care of the School District at the time. When the plaintiffs pointed out the discrimination that was occurring, along with the resultant harm and trauma to plaintiff TR, the defendants' response was not remediation but retaliation, not empathy but isolation, and certainly not aid but continued harm. In short, due to systemic, institutionalized racism, the Defendants initiated and sustained actions that irrevocably damaged plaintiff TR both in that moment and with respect to his future.

2. The aforementioned text, intentionally sent by Fort Myers High School baseball coach, Alex Carcioppolo, to Fort Myers High School's (FMHS) baseball players and coaches, read: "Happy Valentine's Day niggas." Plaintiff TR was one of two players of color coached by Defendant Carcioppolo.

3. Upon learning of the text, the defendants did not reach out to Plaintiff TR or address the overt racism with the members of the baseball team. The ensuing investigation deliberately failed to address the damaging impact of the text on students of color, particularly those like Plaintiff TR who, as members of the baseball team, were entrusted to the care of Coach Carcioppolo and the Defendant school district. The omission of even a marginally appropriate response created an atmosphere that perverted the blatant act of discrimination into a swirl of misplaced victim-blaming. This empowered students and adults to act in ways that caused further trauma and harm, both emotional and economic, to TR and his parents, Plaintiffs Shane and Melanie Reilly. The embracing of discriminatory stereotypes and the refusal to acknowledge

Doc ID: 89d10d2d7689e24e1d3d201a44734287e07b0bf3

behaviors and systems that run contrary to federal and state mandates resulted in retaliation. This not only created a painful daily experience for the plaintiffs but also hindered future opportunities for Plaintiff TR. The Defendant acted to punish Defendant Carcioppolo; yet, paradoxically, concluded that the language used was not racist, thereby ignoring the deep-seated racism endemic in the school environment. This both created and reflected an atmosphere in which a coach not only thought that sending such a text was acceptable but also provided fodder for the events that followed.

4. Instead of conducting an investigation that considered the harm and trauma engendered by the objectively racist text, Defendants School and School Board 'circled the wagons,' tacitly encouraging a response that placed blame on Plaintiff TR and another student of color. They literally left them isolated on a baseball field during a carefully planned walkout protesting the disciplinary action resulting from the text, deliberately leaving the only two students of color alone on a baseball field, subjected to a torrent of racist and derogatory remarks, and once again failing to so much as inquire about the impact on the minors.

## JURISDICTION

5. This case arises under the United States Constitution and the laws of the United States, including the Equal Educational Opportunities Act of 1974 (20 U.S.C. § 1703), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), 42 U.S.C. § 1983, the Florida Educational Equity Act, and Article IX of the Florida Constitution. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331(a), 1343, 2201, and 2202, and 20 U.S.C. §§ 1706, 1708. Additionally, the court may exercise supplemental jurisdiction over plaintiffs' state law claims under the Florida Educational Equity Act (Fla. Stat. §§ 1000.05) and the Florida Administrative Code Ann. R. 6A-19.001, as provided by 28 U.S.C. § 1367(a).

## VENUE

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because 'a substantial part of the events or omissions giving rise to the claims occurred' in this District.

3

Doc ID: 89d19d2d7689e24e1d3d201a44734287e07b0bf3

7. Plaintiffs Shane and Melanie Reilly, and TR, reside within the FMHS attendance zone in Lee County, Florida.

8. Defendant School District of Lee County, Florida ('School District') is a public school system and a local educational agency under federal law, authorized to conduct business. At all relevant times, it was operating in Fort Myers, Lee County, Florida, and maintained its agents, apparent agents, employees, servants, borrowed servants, and representatives in this County. The School District has acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. The School District of Lee County, Florida may be served by delivering to Dr. Christopher S. Bernier at the Lee County Public Education Center, 2855 Colonial Blvd., Fort Myers, FL 33966.

9. The School Board of Lee County, Florida ('School Board') is responsible for directing, operating, controlling, and supervising all free public schools in Lee County, Florida, as outlined in Fla. Stat. §§ 1001.32-33 and 1001.40-42. It oversees the operation of schools within The School District of Lee County, including FMHS, as specified in Fla. Stat. § 1001.42(4). The School Board acts as the contracting agent on behalf of the School District and is subject to suit, according to Fla. Stat. §§ 1001.41(4) and 1001.30. It has acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. Florida law vests final policymaking authority for a school district in the School Board, as demonstrated in K.M. v. School Bd. of Lee Cty., Fla., 150 Fed. App'x. 953, 957 (11th Cir. 2005). The School Board of Lee County, Florida can be served by process by serving Dr. Christopher S. Bernier at the Lee County Public Education Center, 2855 Colonial Blvd., Fort Myers, FL 33966.

10. DR. CHRISTOPHER S. BERNIER is the Superintendent of The School District of Lee County, encompassing all its public schools, including FMHS, and serves as the secretary and executive officer of The Lee County School Board, as specified in Fla. Stat. §§ 1001.32(3), 1001.33. A United States Citizen and resident of Florida, Defendant Bernier is responsible for the administration and management of the schools, as outlined in Fla. Stat. §§ 1001.49, 1001.51. His duties include managing, administering,

and overseeing school operations, instructional programs, classes, extracurricular activities, and educational services to ensure equal educational opportunities for all students of the School District, including TR (Fla. Stat. § 1001.51(6)). Additionally, Bernier is tasked with ensuring compliance with all federal and state laws, rules of the State Board of Education, and enforcement of School Board policies (Fla. Stat. § 1001.51(14)). He is ultimately responsible for supervising all school administrators, faculty, and staff, including FMHS coaches. Bernier acted under color of state law at all times referenced in this complaint, within the meaning of 42 U.S.C. § 1983, and is sued in his official capacity. Dr. Christopher S. Bernier can be served with process at the Lee County Public Education Center, 2855 Colonial Blvd., Fort Myers, FL 33966.

11. Defendant Steven Cato was the FMHS Athletic Director. He is a United States citizen and resident of the state of Florida. He was responsible for oversight and management of Athletics at FMHS. He was charged with implementing the operation of FMHS athletics, and other athletic services related thereto, as needed to provide equal educational opportunities for all students in the School District, including TR. Cato was also charged with ensuring that all laws and rules of the State Board of Education are properly observed, and School Board policies are enforced and followed. Defendant Cato acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Steven Cato may be served at Fort Myers High School, 2635 Cortez Blvd., Fort Myers, FL 33901.

12. Defendant KYLE BURCHFIELD was the FMHS Head Coach for the baseball team. He is a United States citizen and resident of the state of Florida. He was responsible for the athletic administration and management of the FMHS baseball team. He was charged with implementing the operation of the baseball team, and other athletic services related thereto, as needed to provide equal educational opportunities for all children in the School District, including TR. Defendant Burchfield was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and that School Board policies are enforced and followed. Defendant Burchfield acted under color of state law at all times

5

Doc ID: 89d10d2d7689e24e1d3d201a44734287e07b0bf3

referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Kyle Burchfield is now the pitching coach at Naples High School, and he may be served at Naples High School, 100 Golden Eagle Circle, Naples, Florida, 39102.

13. Defendant CHRISTOPHER CHAPELL was the FMHS JV Head Coach and Assistant Varsity Coach for the baseball team. He is a United States Citizen and resident of the state of Florida. He was responsible for athletic administration and management of the FMHS JV baseball team and assisting in these capacities for the Varsity team. He was charged with implementing the operation of the baseball team, and other athletic services related thereto, as are needed to provide equal educational opportunities for all children in the School District, including TR. Defendant Chappell was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and School Board policies are enforced and followed. Defendant Chappell acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Christopher Chapell may be served at Fort Myers High School, 2635 Cortez Blvd., Fort Myers, FL 33901.

14. Defendant ROBERT BUTZ is the Principal for FMHS. He is a United States citizen and resident of the state of Florida. Defendant Butz was responsible for the administration and management of FMHS and is charged with managing, administering, and overseeing the operation of the school, including overseeing instruction, classes, and extracurriculars, as well as educational services needed to provide equal educational opportunities for all students of FMHS, including TR. Id. § 1001.51(6). Defendant Butz is also charged with ensuring that all federal and state laws and rules of the State Board of Education are properly observed, and school policies are enforced and followed. Defendant Butz acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Robert Butz may be served at Fort Myers High School, 2635 Cortez Blvd., Fort Myers, FL 33901.

15. Defendant ROBERT HINSON was an FMHS teacher and coach for the baseball team. He is a United States citizen and resident of the state of Florida. He was responsible for assisting in the athletic

Doc ID: 89d19d2d7689e24e1d3d201a44734287e97b0bf3

administration and management of the FMHS baseball team, including the operation of the team and other athletic services related thereto, as needed to provide equal educational opportunities for all children in the School District, including TR. Defendant Hinson was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and that School Board policies are enforced and followed. Defendant Hinson acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Robert Hinson may be served at his current place of employment at Lawrence Dunbar Middle School in Fort Myers.

16. Defendant ALEX CARCIOPPOLO was the FMHS Assistant Coach for the baseball team. He is a United States citizen and resident of the state of Florida. He was responsible for assisting in the athletic administration and management of the FMHS baseball team, including the operation of the team and other athletic services related thereto, as needed to provide equal educational opportunities for all children in the School District. Defendant Carcioppolo was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and that School Board policies are enforced and followed. Defendant Carcioppolo acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity. Alex Carcioppolo may be served at Fort Myers High School, 2635 Cortez Blvd., Fort Myers, FL 33901.

**FACTUAL BACKGROUND**

17. Plaintiff TR, a minor entrusted to the care of the defendants, experienced discrimination based on his color while participating as a student-athlete on the FMHS baseball team. He was subjected to widespread color and race-based harassment during school hours and at school-related activities under the School District's control and jurisdiction. On February 14, 2023, Defendant Alex Carcioppolo sent a text message to the baseball team and coaching staff that read: 'Happy Valentine's Day niggas.' A copy of that text message is attached below:

7



18. Upon realizing the message was poorly received, Defendant Carcioppolo deleted the communication. This incident exacerbated racism among team members, leading white athletes to unjustly

Doc ID: 89d10d2d7689c24c1d3d201a44734287c07b0bf3

blame TR and the other student of color for reporting the text to school authorities, despite lacking evidence. Team members disclosed to the Athletic Director, coaches, and school administration that racial slurs were routinely used among team members.

19. Upon learning that Plaintiff TR was targeted and subjected to racist treatment, the School District, acting through Defendants, not only failed to take any remedial action or to so much as to inquire into the impact of the treatment on plaintiff TR, but, instead, indicated that Plaintiff was a problem because he was bothered by such treatment.

20. After the February 14 incident, the Defendants held a series of meetings with the players but failed to address the trauma caused by the racism directed at Plaintiff TR. Instead, they further targeted Plaintiff TR, both on the field and through reports of fabricated behavioral violations. White student-athletes were not subjected to such treatment. Observing the adults' treatment of the Plaintiff, white athletes continued to use racist and hostile language towards Plaintiff TR.

21. The encouragement of white students to treat Plaintiff TR in a racist and disparate manner included the false assertion by white students that Plaintiff TR had expressed a desire to fight another student. This alleged violation led to the summoning of Plaintiff TR's parents (Plaintiffs Shane and Melanie Reilly) to a meeting, where they were informed that the accusers had just recanted their accusations. Upon information and belief, the white students were not disciplined for making false accusations against the plaintiff. Once again, the school administration treated the incident as isolated, ignoring evidence of sustained and systemic racism that continued to harm the plaintiffs.

22. The disparity persisted across all facets of athletic and educational life. TR was socially ostracized during games, team dinners, and school events—all overseen by the School District. Furthermore, students and staff directed race and color-based negative remarks, as well as comments of a retaliatory nature, towards Plaintiff TR and his parents. Additionally, the Defendants permitted other parents to directly provide financial benefits to the baseball program, bypassing the authorized Athletic Booster Club. This Club operates in accordance with School District policy and adheres to specific rules,

Doc ID: 89d10d2d7689e24e1d3d201a44734287e07b0bf3

suggesting that such actions were taken to obscure the discrimination.

23. Furthermore, TR's parents were targeted for speaking out about the discrimination and prejudice they encountered. When they reported the unfair treatment and the widespread, accepted use of the N-word by players and coaches towards TR to the Defendants, they found themselves ostracized at parent events and deliberately excluded from communications by the Defendants. Other parents, with the Defendants' knowledge and approval, began to sponsor team events privately rather than through the Authorized Athletic Booster Club, intentionally excluding TR's parents from these events and activities. This represented an organized effort by the Defendants to ostracize TR and his parents, continuing to ignore the discrimination and resulting trauma.

24. The incidents, issues, and complaints continued, when, on April 5, 2023, Principal Robert Butz removed Defendant Burchfield from his coaching duties. Once again, Defendant School District took an "isolation" approach to the systemic racism evident at the school, particularly the athletic department. Instead of investigating the culture of racism and addressing the trauma and pain experienced continually by plaintiffs, Defendants sought to quickly "close the book on the incidents."

25. On the day following Coach Burchfield's removal, a baseball game was scheduled between FMHS and Estero High School. Scouts and recruiters were expected at the game to evaluate players for scholarships and university recruitment. In advance, Defendants, FMHS coaches, staff, students, and other parents planned a "walkout" to protest the coach's removal. District faculty and staff, including Defendants Hinson and Chappell, joined the players in walking out, exposing Plaintiff TR to disparagement, public humiliation, and trauma. Plaintiff TR and another student-athlete of color were left standing alone on the field, while the other players and adults entrusted with their care deliberately walked off. These two minors bore the brunt of the Defendants' discriminatory victim-blaming. Recruiters and scouts witnessed the treatment of TR and the other student of color.

25. After the walkout, the Defendant again failed to investigate the impact of the egregious events on the plaintiffs. The suffering of Plaintiff TR was never considered by the Defendants, despite the

10

outrageous nature of the event.

26. After the walkout, the remaining games of the season were canceled. In devising a remedy for the walkout, the Defendant did not consider the impact of this decision on Plaintiff TR. As a result, the plaintiff, who was already a victim of the staged walkout that isolated him and another student of color amidst racist rhetoric, faced further punishment. This decision deprived him of the opportunity to play baseball that year, hindered his development as a player, and eliminated his chance to showcase his talents to college scouts and recruiters.

26. The School District and School Board, acting under color of law, have endorsed the discrimination, allowing it to spread and intensify within the FMHS community. The actions of the Defendants were not only insufficient to fulfill their legal obligations to TR, his parents, and others subjected to overt discrimination and retaliation, but the actions of the Defendants also worsened the harm inflicted.

## CAUSES OF ACTION

### Count I: Equal Educational Opportunities Act of 1974 ("EEOA")

27. Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated.

28. Defendants are bound by the provisions of the EEOA, 20 U.S.C. § 1703.  29. Section 1703 of the EEOA states in part:

> No state shall deny equal educational opportunity to an individual on  account of his or her race color sex or national origin by—
>
> (a) the deliberate segregation by an education agency of students on the  basis of race, color, or national origin among or within schools; [and]
>
> (b) the failure of an education agency that has formally practiced such  deliberate segregation to take affirmative steps, consistent with part 4 of this subchapter, to remove the vestiges of a dual school system[.]
>
> 20 U.S.CC. § 1703(a), (b).

11

29. Through their actions and inactions, including the act of excluding these students from equal opportunities at public school, the defendants have denied Plaintiffs equal educational opportunity an account of their color by deliberately segregating them from their peers because of their color.

30. By virtue of creating a different athletic system for students of color such as plaintiff TR and the white students, Defendants effectively segregated these students illegally. Defendants denied Plaintiff equal educational opportunities on account of the color of his skin by failing to take appropriate action to overcome race-based barriers that impede these students' equal participation in Defendants' public-school programs.

31. Defendants' failure to take appropriate action includes but is not limited to:

- A permissive environment in which the use of derogatory racial terms is tolerated and condoned;

- Inconsistent discipline with more infractions and harsher punishments being meted out to students of color including plaintiff TR

- Intentionally allowing rampant threats, hostility, and harassment to occur against students of color, including the plaintiff TR;

- Intentionally exposing students of color including the plaintiff TR to known harassment, embarrassment, and disparagement by other students, faculty, and staff;

- Retaliatory application of discipline and revisions of the Codes of Conduct unfairly targeted students of color including TR;

- Reduced playing time and canceled seasons on the basis of racism and discrimination and in retaliation for engaging in protected activities; and,

- Condoned and participated in retaliatory acts against TR and his parents by publicly humiliating and shaming TR and his parents, and condoning and/or encouraging others to do the same.

12

Doc ID: 89d19d2d7689e24e1d3d201a44734287e97b0bf3

32. As a result of the Defendants' discriminatory and retaliatory conduct, they denied TR a free, non-discriminatory public education, the opportunity to learn the skills and subject matter set forth in Florida standards, and access to other activities and programs available to students enrolled in public schools, thus impacting his full learning and earning potential.

33. By failing to take appropriate action to address race and color-based harassment and discrimination, which impeded TR's equal participation in the Defendants' instructional programs, the Defendants denied TR an equal education.

34. This violation of the Equal Educational Opportunities Act (EEOA) and state law was due to his color, and in retaliation against TR and his parents for engaging in protected activities. Defendants' conduct violates the rights of Plaintiffs under the EEOA. As a result of Defendants' actions and inactions, Plaintiffs have suffered and will continue to suffer irreparable harm, which includes but is not limited to the loss of education and educational opportunities provided to all through the athletic program, an inability to overcome illegal barriers on the basis of color, trauma, and diminished educational and future employment opportunities.

35. Plaintiffs request declaratory and injunctive relief to remedy Defendants' ongoing violations of these rights.

### Count II: Title VI of the Civil Rights Act of 1964

36. Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated.

37. Title VI Provides that "no person in the United States shall, on the ground of race color or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under, or any program receiving federal funding." 42 U.S.C. §2000d.

38. As recipients of federal funding, The School District and The School Board are prohibited from discriminating or retaliating against Plaintiffs by excluding them from educational services,

13

Doc ID: 89d19d2d7689e24e1d3d201a44734287e97b0bf3

programs, and activities directly sponsored by the district and its component schools, failing to provide them with equal access to educational services, programs, and activities directly sponsored by the district and its component schools, or providing them with inferior services, programs, and activities directly sponsored by the district and its component schools, on the basis of their race and color. Defendants are aware of their own Title VI obligations.

39. Plaintiff TR suffered harassment, discrimination, and retaliation based on his color, experiencing unwelcome conduct, taunts, threats, hostile behavior, and racially motivated hateful conduct. Title VI mandates that Defendants respond to the harassment and discrimination faced by Plaintiff TR, especially when it was severe enough to impede his ability to participate in and benefit from the Defendants' educational programs and activities, creating a hostile and retaliatory environment. Despite being aware for months that Plaintiff was the target of racially motivated attacks and harassment—including the use of racial slurs, disparate application of rules and Codes, threatening behavior at school, and a staged walkout—Defendants failed to take prompt or effective steps to halt the harassment, eliminate the hostile environment, prevent its recurrence, or remedy its effects. On the contrary, Defendants portrayed the plaintiff as the cause of the problems faced by the baseball team, thereby encouraging other team members and their parents to target the plaintiffs with racist and derogatory language and actions.

40. Defendants promoted the worldview that ignoring endemic racism would allow the team to resume baseball as if nothing were amiss. Plaintiff TR and his parents were viewed as impediments to this narrative and were repeatedly targeted with racial slurs, accusations, and maligning gestures. The School District and School Board acted knowingly, intentionally, recklessly, and with deliberate indifference by not only allowing the discrimination to occur in the first place but also by permitting the retaliation after the Plaintiffs engaged in protected activity.

41. Defendants, acting under color of law, deprived Plaintiffs of their right to educational services, programs, and activities directly sponsored by the district and its component schools on the basis of their

14

color. Defendants acted intentionally and with deliberate indifference to the likelihood that the federally protected rights of Plaintiffs would be violated, and in fact, were violated multiple times through ongoing retaliation. Defendants wholly failed to act in a manner sufficient to prevent or address both discrimination and retaliation.

42. By excluding the Plaintiffs from educational services, programs, and activities directly sponsored by the School District and its component schools, and segregating them through disparate treatment, the Defendants discriminated against the Plaintiffs on the basis of their color and retaliated against the Plaintiffs for engaging in protected activity.

43. Through their actions and inactions based on color, the Defendants excluded the Plaintiffs from participation in public school education, educational services, programs, and activities directly sponsored by the School District and its component schools. Consequently, they denied the Plaintiffs the benefits of these programs, subjecting them to discrimination as set forth above.

44. The Defendants' actions and inactions have caused and will continue to cause the Plaintiffs irreparable harm. This includes but is not limited to, the loss of educational time, the loss of educational opportunities and programs, the inability to overcome color-based barriers, trauma, and diminished educational and future employment prospects. The Defendants' conduct has caused and will continue to inflict compensable injuries upon the Plaintiffs, thereby entitling them to damages.

45. Plaintiffs seek declaratory and injunctive relief to address these ongoing violations, in addition to compensatory damages.

**Count III: Fourteenth Amendment Equal Protection Clause 42 U.S.C. § 1983**

46. Plaintiffs reallege and incorporate by reference all previous allegations as if fully restated herein.

47. The 14th Amendment Equal Protection Clause provides that "No State shall make or enforce

15

any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

48. Defendants, acting under color of state law, have engaged and continue to engage in a policy and practice designed to deprive Plaintiffs of their right to equal protection under the laws, as guaranteed by the 14th Amendment.

49. Defendants maintain a custom, policy, and practice of excluding students of color, including TR, from educational services, programs, and activities directly sponsored by the School District and its component schools, treating these students differently. Furthermore, Defendants maintained policies and practices of discriminatory and retaliatory discipline of students based on race and color or for engaging in protected activities and voicing concerns of discrimination. They were deliberately indifferent to the perpetuation of a racially hostile educational environment and retaliated against parents and students, like Plaintiff, who complained about discrimination. These policies were adopted and enforced with the intent to discriminate and retaliate against Plaintiffs on the basis of color.

50. As a result, the Defendants denied the Plaintiffs access to educational services, programs, and activities directly sponsored by the district and its component schools, along with other opportunities available to public school students, impacting their full learning and earning potential. The Defendants' actions and inactions have led to and will continue to result in irreparable harm to the Plaintiffs. This harm includes, but is not limited to, the loss of educational and athletic opportunities, an inability to overcome racial barriers, and diminished educational and future employment prospects. Consequently, the Defendants' conduct has caused and will persist in causing compensable injuries to the Plaintiffs, entitling them to compensatory damages.

51. Plaintiffs seek declaratory and injunctive relief to address these ongoing violations, in addition to compensatory damages.

16

**Count IV: Fourteenth Amendment Equal Protection Clause 42 U.S.C. § 1983**

52. Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated.

53. Through their actions and inactions, Defendants deprived Plaintiffs of their constitutionally protected property interest in a public education by denying them their right to educational services, programs, and activities directly sponsored by the district and its component schools, and access to other activities and programs available to public school students, thereby impeding their full learning and earning potential.

54. Defendants' lack of any procedures following the denial of these programs and services, including the cancellation of the rest of the season, was constitutionally inadequate. Defendants denied Plaintiffs the right to receive educational services, programs, and activities directly sponsored by the district and its component schools, and access to other activities and programs available to public school students, without appropriate procedures, including notice, an opportunity to be heard, or an avenue to challenge an adverse determination. As a result, Defendants denied Plaintiffs notice and an opportunity to be heard regarding their denial of educational services, programs, and activities directly sponsored by the district and its component schools.

55. Defendants acted pursuant to a custom, policy, and practice in depriving Plaintiffs of educational services, programs, and activities directly sponsored by the School District and its component schools without notice or opportunity to be heard, and retaliating against Plaintiffs for voicing concerns and engaging in protected activity.

56. As a result of the Defendants' actions and inactions, Plaintiffs suffered and will continue to suffer irreparable harm, which includes, but is not limited to, the loss of education and educational opportunities provided to all through the athletic program, and inability to overcome racial barriers, and diminished educational and future employment opportunities. Defendants' actions caused and will continue to cause Plaintiffs to suffer compensable injuries, entitling the Plaintiffs to compensatory

17

damages.

57. Plaintiffs seek declaratory and injunctive relief to remedy these ongoing constitutional violations, and also seek compensatory damages.

**Count V: Florida Educational Equity Act, Fla. Stat. §§ 1000.05 et seq., and Fla. Admin. Code  Ann R. 6A-19.001 et seq. 1983**

58. Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated.

59. The Florida Educational Equity Act prohibits the exclusion of or discrimination against students on the basis of race. See Fla. Stat. § 1000.05(2)(a). It also provides that "No person in this state shall, on the basis of race… be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any public K-20 education program or activity… conducted by a public educational institution that receives or benefits from federal or state financial assistance." *Id.*

60. Defendants' actions and inactions to exclude Plaintiffs from educational services, programs, and activities directly sponsored by the district and its component schools, and access to other activities and programs available to public school students, violate Florida's educational equity act. Defendants' policies and practices as described herein violate the rights of Plaintiffs under the Florida Educational Equity Act. As a result of the Defendants' actions and inactions, Plaintiffs suffered and will continue to suffer irreparable harm, which includes, but is not limited to, the loss of education and educational opportunities provided to all through the athletic program, and the inability to overcome racial barriers, and diminished educational and future employment opportunities. Defendants' actions caused and will continue to cause Plaintiffs to suffer compensable injuries, entitling the Plaintiffs to compensatory damages.

61. Plaintiffs seek declaratory and injunctive relief to remedy these ongoing violations,  and also seek compensatory damages, attorneys' fees, and costs, as provided by the statute.

Doc ID: 89d10d2d7689e24e1d3d201a44734287e07b0bf3

**Count VI: Violation of Article IX, ¶ 1 of the Florida Constitution**

62. Plaintiffs reallege and incorporate by reference the allegations set forth herein as if fully restated.

63. As described herein, Defendants are denying Black students and parents, like Plaintiffs, equality before the law and are depriving them of their right to a uniform and high-quality education and access to equivalent educational programs and services because of their race and color in violation of Article IX, Section 1 of the Florida Constitution. As a result of these violations, Plaintiffs have suffered the harms and damages alleged herein.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this court:

    a. Assume jurisdiction over this matter;

    b. Declare that Defendants' acts and omissions violate Plaintiffs' rights under the EEOA, Title VI of the Civil Rights Act of 1964; the 14th Amendment Equal Protection and Due Process Clauses; the Florida Educational Equity Act; and the Florida Constitution;

    c. Declare Defendants to be liable for Plaintiffs' damages;

    d. Enter injunctive relief in the form of:

        i. Requiring Defendants to adopt policies, procedures, and training to end defendants' ongoing violations of the EEOA, Title VI, the US Constitution and state law, and to publicize to the community at large and to class members, in a language and form of communication that they understand those new policies and procedures;

        ii. Compensate TR for the denial of equal access to and participation in programs and activities offered by FMHS, including the baseball program; and

        iii. Requiring defendants to adopt policies and procedures to provide students with notice and an opportunity to be heard regarding educational decisions and disciplinary decisions.

    e. Award compensatory damages to Plaintiffs for lost educational opportunities and employment opportunities as a result of the Defendants' conduct, and award damages for emotional distress, mental anguish, and or related emotional damages that Plaintiffs have incurred as a result of Defendants' unlawful conduct and violations of Title VI, and the Equal Protection and Due Process clauses of the 14th Amendment;

    f. Award Plaintiffs reasonable attorney fees and cost pursuant to 42 USC §1988 and Fla. Stat. § 1000.05(7); and

    g. Grant any other relief the court deems just in reasonable.

Doc ID: 89d19d2d7689e24e1d3d201a44734287e07b0bf3

Respectfully submitted,

*/s/ Joseph Montgomery*_____
Joseph Montgomery, Esquire.
State Bar No: 120569
Montgomery Law Group, PLLC
1 U.S. Highway One, Suite 202
North Palm Beach, FL 33408
**Service email:
joe@educationslawyers.com

**ATTORNEYS FOR PLAINTIFFS**

Doc ID: 89d10d2d7689c24e1d3d201a44734287e07b0bf3

**<u>VERIFICATION</u>**

I, MELANIE REILLY, hereby declare under penalty of perjury:

1. I am a Plaintiff in the above-captioned action.

2. I have read the foregoing Complaint and know the contents thereof.

3. The same is true of my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

4. I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 8, 2024

*Melanie Reilly*

_____
MELANIE REILLY, *Plaintiff*

21

## **VERIFICATION**

I, SHANE REILLY, hereby declare under penalty of perjury:

5.   I am a Plaintiff in the above-captioned action.

6.   I have read the foregoing Complaint and know the contents thereof.

7.   The same is true of my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 8, 2024

_____

SHANE REILLY, *Plaintiff*

22

**<u>VERIFICATION</u>**

I, TR, hereby declare under penalty of perjury:

9. I am a Plaintiff in the above-captioned action.

10. I have read the foregoing Complaint and know the contents thereof.

11. The same is true of my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

12. I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 8, 2024

_____
TR, *Plaintiff*

23