**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

**CASE NO. 24-00321-CIV-ALTONAGA**

TR;
MELANIE REILLY; and
SHANE REILLY

       *Plaintiffs,*

     v.                          **JURY TRIAL DEMANDED**

THE SCHOOL DISTRICT OF LEE
COUNTY, FLORIDA; THE SCHOOL
BOARD OF LEE COUNTY, FLORIDA;
STEPHAN CATO; KYLE BURCHFIELD;
ALEX CARCIOPPOLO; ROBERT
HINSON; CHRISTOPHER CHAPELL;
ROBERT BUTZ; and CHRISTOPHER S.
BERNIER, Ph.D.

       *Defendants.*

_____/

**<u>PLAINTIFFS' FIRST AMENDED VERIFIED COMPLAINT</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW** Plaintiffs TR, Melanie Reilly, and Shane Reilly, filing their

First Amended Verified Complaint against Defendants THE SCHOOL DISTRICT

1

OF LEE COUNTY, FLORIDA; THE SCHOOL BOARD OF LEE COUNTY, FLORIDA; CHRISTOPHER S. BERNIER, in his official and individual capacities; KYLE BURCHFIELD, in his official and individual capacities; ROBERT BUTZ, in his official and individual capacities; ALEX CARCIOPPOLO, in his official and individual capacities; STEPHAN CATO, in his official and individual capacities; CHRISTOPHER CHAPPELL, in his official and individual capacities; and ROBERT HINSON, in his official and individual capacities. In support thereof, Plaintiffs allege the following:

## **INTRODUCTION**

1. The events described in this complaint burst to light with the purposeful delivery of a blatantly racist text by an adult agent of The School District of Lee County (the 'School District') entrusted with the care of TR, a student-athlete, as well as other minor children. This text both revealed and perpetuated a culture of long-seated biases on the basis of race and color, which permeated the educational environment in the School District. After this discrimination was revealed, the defendants did not take direct action to address it. Instead, they insisted that clearly related behaviors were unrelated and failed to protect the actual victims of this discrimination. This group includes, most notably, the plaintiff TR, who was a minor child under the care of the School District at the time. When the plaintiffs

pointed out the discrimination that was occurring, along with the resultant harm and trauma to plaintiff TR, the defendants' response was not remediation but retaliation, not empathy but isolation, and certainly not aid but continued harm. In short, due to systemic, institutionalized racism, the Defendants initiated and sustained actions that irrevocably damaged plaintiff TR both in that moment and with respect to his future.

2. The aforementioned text, intentionally sent by Fort Myers High School (FMHS) baseball coach, Alex Carcioppolo, to FMHS's baseball players and coaches, read: "Happy Valentine's Day niggas." Plaintiff TR was one of two players of color coached by Carcioppolo. The remaining players on the team were white.

3. Upon learning of the text, the defendants did not reach out to Plaintiff TR or address the overt racism with the members of the baseball team. The ensuing investigation deliberately failed to address the damaging impact of the text on students of color, particularly those like Plaintiff TR who, as members of the baseball team, were entrusted to the care of Coach Carcioppolo and other agents of the Defendants the School District and the School Board of Lee County, Florida (the 'School Board'). The omission of even a marginally appropriate response engendered an atmosphere that perverted the blatant act of discrimination into a swirl of misplaced victim-blaming. This empowered students and adults to act in

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a69

ways that caused further trauma and harm, both emotional and economic, to TR and his parents, Plaintiffs Shane and Melanie Reilly. The embrace of discriminatory stereotypes and the refusal to acknowledge behaviors and systems that run contrary to federal and state mandates resulted in retaliation. This not only created a painful daily experience for the plaintiffs but also hindered future opportunities for Plaintiff TR. The Defendants School District and School Board acted to punish Carcioppolo, yet, paradoxically, concluded that the language used was not racist, thereby ignoring the deep-seated racism endemic in the school environment. This created and reflected an atmosphere that not only encouraged a coach to think sending such a text was acceptable, but also set the stage for the events that followed.

4. Instead of conducting an investigation that considered the harm and trauma engendered by the objectively racist text, Defendants School and School Board 'circled the wagons,' tacitly encouraging a response that placed blame on Plaintiff TR and another student of color. Defendants literally left them isolated on a baseball field during a carefully planned "walkout" protesting the disciplinary action against Burchfield, deliberately leaving the only two students of color alone on a baseball field, subjected to a torrent of racist and derogatory remarks, and once again failing to so much as inquire about the impact on the minors.

**JURISDICTION**

5. This case arises under the United States Constitution and the laws of the

4

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6f

United States, including the Equal Educational Opportunities Act of 1974 (20 U.S.C. § 1703), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), 42 U.S.C. § 1983, the Florida Educational Equity Act, and Article IX of the Florida Constitution. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331(a), 1343, 2201, and 2202, and 20 U.S.C. §§ 1706, 1708. Additionally, the court may exercise supplemental and pendent jurisdiction over plaintiffs' state law claims under the Florida Educational Equity Act (Fla. Stat. §§ 1000.05) and the Florida Administrative Code Ann. R. 6A-19.001, as provided by 28 U.S.C. § 1367(a).

## VENUE

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

7. Plaintiffs Shane and Melanie Reilly, and TR, reside within the FMHS attendance zone in Lee County, Florida.

8. Defendant School District of Lee County, Florida ('School District') is a public school system and a local educational agency under federal law, authorized to conduct business. At all relevant times, it was operating in Fort Myers, Lee County, Florida, and maintained its agents, apparent agents, employees, servants,

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

borrowed servants, and representatives in this County. The School District has acted under color of state law, within the meaning of 42 U.S.C. § 1983, at all times referenced in this complaint.

9. The School Board of Lee County, Florida ('School Board') is the public body responsible for directing, operating, controlling, and supervising all free public schools in Lee County, Florida, as outlined in Fla. Stat. §§ 1001.32-33 and 1001.40-42. It oversees the operation of schools within The School District of Lee County, including FMHS, as specified in Fla. Stat. § 1001.42(4). The School Board acts as the contracting agent on behalf of the School District and is subject to suit, according to Fla. Stat. §§ 1001.41(4) and 1001.30. It has acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. Florida law vests final policymaking authority for a school district in the School Board, as demonstrated in *K.M. v. School Bd. of Lee Cty., Fla.*, 150 Fed. App'x. 953, 957 (11th Cir. 2005).

10. Dr. Christopher S. Bernier is the Superintendent of the School District, encompassing all of its public schools, including FMHS, and serves as the secretary and executive officer of the School Board, as specified in Fla. Stat. §§ 1001.32(3), 1001.33. A United States citizen and resident of Florida, Bernier is responsible for the administration and management of the schools, as outlined in Fla. Stat. §§ 1001.49, 1001.51. His duties include managing, administering, and overseeing

6

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

school operations, instructional programs, classes, extracurricular activities, and educational services to ensure equal educational opportunities for all students of the School District, including TR (Fla. Stat. § 1001.51(6)). Additionally, Bernier is tasked with ensuring compliance with all federal and state laws, the rules of the State Board of Education, and enforcement of School Board policies (Fla. Stat. § 1001.51(14)). He is ultimately responsible for supervising all school administrators, faculty, and staff, including FMHS coaches. Bernier acted under color of state law, within the meaning of 42 U.S.C. § 1983, at all times referenced in this complaint. His actions bind the Defendant School District.

11. Steven Cato was the FMHS Athletic Director. He is a United States citizen and resident of the state of Florida. He was responsible for oversight and management of athletics at FMHS including the implementation of all relevant policies of Defendants School Board and School District. He was charged with implementing the operation of FMHS athletics, and other athletic services related thereto, as needed to provide equal educational opportunities for all students in the School District, including TR. Cato acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. His actions bind the Defendant School District. He is also sued in his individual capacity.

7

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

12. Kyle Burchfield was the FMHS Head Coach of the baseball team. He is a United States citizen and resident of the state of Florida. He was responsible for the athletic administration and management of the FMHS baseball team. He was charged with implementing the operation of the baseball team, and other athletic services related thereto, as needed to provide equal educational opportunities for all children in the School District, including TR. Burchfield was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and that School Board policies are enforced and followed. He was responsible for the policy and procedures of the athletic department Burchfield acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. His actions bind the Defendant School District. He is also sued in his individual capacity.

13. Christopher Chappell was the Head Coach of the FMHS Junior Varsity (JV) team and Assistant Coach for the Varsity baseball team. He is a United States citizen and resident of the State of Florida. He was responsible for athletic administration and management of the FMHS JV baseball team and assisting in these capacities for the varsity team. He was charged with the operation of the baseball team, and other athletic services related thereto, as are needed to provide equal educational opportunities for all children in the School District, including

8

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a66

TR. Chappell was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and School Board policies are enforced and followed. Chappell acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983 and his actions bind the Defendant School District.

14. Robert Butz is the Principal of FMHS. He is a United States citizen and resident of the state of Florida. Butz was responsible for the administration and management of FMHS and is charged with managing, administering, and overseeing the operation of the school, including overseeing instruction, classes, and extracurriculars, as well as educational services needed to provide equal educational opportunities for all students of FMHS, including TR. Fla. Stat. § 1001.51(6). Butz is also charged with ensuring that all federal and state laws and rules of the State Board of Education are properly observed, and school policies are enforced and followed. Butz acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. His actions bind the Defendant School District. He is also sued in his individual capacity.

15. Robert Hinson was an FMHS teacher and coach for the baseball team. He is a United States citizen and resident of the state of Florida. He was responsible for assisting in the athletic administration and management of the FMHS baseball team, including the operation of the team and other athletic services related thereto,

9

as needed to provide equal educational opportunities for all children in the School District, including TR. Hinson was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and that School Board policies are enforced and followed. Hinson acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. His actions bind the Defendant School District. He is also sued in his individual capacity.

16. Alex Carcioppolo was the Assistant Coach for the FMHS baseball team. He is a United States citizen and resident of the state of Florida. He was responsible for assisting in the athletic administration and management of the FMHS baseball team, including the operation of the team and other athletic services related thereto, as needed to provide equal educational opportunities for all children in the School District. Carcioppolo was also charged with ensuring that all laws and rules of the State Board of Education are properly observed and that School Board policies are enforced and followed. Carcioppolo acted under color of state law at all times referenced in this complaint within the meaning of 42 U.S.C. § 1983. His actions bind the Defendant School District. He is also sued in his individual capacity.

## FACTUAL BACKGROUND

17. Plaintiff TR, a minor entrusted to the care of Defendants, experienced

10

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

discrimination based on his color while participating as a student-athlete on the FMHS baseball team. As detailed herein, he was subjected to widespread disparate treatment based on his color and race-based harassment during school hours and at school-related activities under the School District's control and jurisdiction. On February 14, 2023, Alex Carcioppolo sent a text message to the baseball team and coaching staff that read: 'Happy Valentine's Day niggas.' A copy of that text message is included below:

IMAGE ON NEXT PAGE

Doc ID: 7088e12e3559f51e9e2e2e7d60ee93823e518e6f



18. Upon realizing the message was poorly received, Carcioppolo deleted the communication. This incident exacerbated racism among team members, leading white athletes to unjustly falsely blame TR and the other student of color for

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a69

reporting the incendiary text to school authorities. Team members disclosed to the Athletic Director, coaches, and school administration that racial slurs were routinely used among team members.

19. Upon learning that Plaintiff TR was targeted and subjected to racist treatment, Defendant School District, acting through its agents, not only failed to take any remedial action or to so much as to inquire into the impact of the treatment on Plaintiff TR, but, instead, overtly sent out the message that Plaintiff was a problem because he was bothered by such treatment.

20. After the February 14th incident, the Defendants held a series of meetings with the players but failed to address the trauma caused by the racism directed at Plaintiff TR. Instead, they further targeted Plaintiff TR, both on the field and through reports of fabricated behavioral violations. White student-athletes were not subjected to such treatment. Observing the School District Defendants' treatment of Plaintiff, white athletes continued to use racist and hostile language towards Plaintiff TR.

21. The encouragement of white students to treat Plaintiff TR in a racist and disparate manner resulted in the false assertion by white students that Plaintiff TR had expressed a desire to fight another student. This alleged but fabricated conduct of TR's led to the summoning of Plaintiff TR's parents (Plaintiffs Shane and Melanie Reilly) to a meeting, where they were informed that the accusers had just

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6c

recanted their accusations. Upon information and belief, the white students were not disciplined for making false accusations against the plaintiff. Once again, the school administration treated the incident as isolated, ignoring evidence of sustained and systemic racism that continued to harm the plaintiffs.

22. The disparity persisted across all facets of athletic and educational life. TR was socially ostracized during games, team dinners, and school events—all overseen by the Defendant School District. Furthermore, students and staff directed race and color-based negative remarks, as well as comments of a retaliatory nature, towards Plaintiff TR and his parents. Additionally, the Defendants permitted other parents to directly provide financial benefits to the baseball program, bypassing the authorized Athletic Booster Club. If proper procedures had been followed monies and activities would have flowed through the authorized Club which operates in accordance with School District policy and adheres to specific rules, suggesting that such actions were taken to obscure the discrimination.

23. Furthermore, TR's parents were targeted for speaking out about the discrimination and prejudice they encountered. When they reported the unfair treatment and the widespread, accepted use of the N-word by players and coaches towards TR to the Defendants, they found themselves ostracized at parent events and deliberately excluded from communications by the Defendants. Other parents, with the Defendants' knowledge and approval, began to sponsor team events

14

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6f

privately rather than through the authorized Athletic Booster Club, intentionally excluding TR's parents from these events and activities. This represented an organized effort by the Defendants to ostracize TR and his parents, continuing to ignore the discrimination and resulting trauma.

24. The incidents, issues, and complaints continued, when, on April 5, 2023, Principal Robert Butz removed Burchfield from his coaching duties. Once again, Defendant School District took an "isolation" approach to the systemic racism evident at the school, particularly the athletic department. Instead of investigating the culture of racism and addressing the trauma and pain experienced continually by plaintiffs, Defendants sought to quickly "close the book on the incidents."

25. On the day following Coach Burchfield's removal, a baseball game was scheduled between FMHS and Estero High School. College scouts and recruiters were expected at the game to evaluate players for scholarships and university recruitment. In advance, Defendants, FMHS coaches, staff, students, and other parents planned a "walkout" to protest the coach's removal. District faculty and staff, including Defendants Hinson and Chappell, joined the players in walking out, exposing Plaintiff TR to disparagement, public humiliation, and trauma. Plaintiff TR and another student-athlete of color were left standing alone on the field, while the other players and adults entrusted with their care deliberately walked off. These two minors bore the brunt of the Defendants' discriminatory victim-blaming.

15

Recruiters and scouts witnessed the treatment of TR and the other student of color.

26. After the "walkout", the Defendants School District and School Board again failed to investigate the impact of the egregious events on the plaintiffs. The suffering of Plaintiff TR was never considered by the Defendants, despite the outrageous nature of the event.

27. After the "walkout", the remaining games of the season were canceled. In devising a remedy for the "walkout", the Defendants did not consider the impact of this decision on Plaintiff TR. As a result, Plaintiff, who was already a victim of the staged "walkout" that isolated him and another student of color amidst racist rhetoric, faced further punishment. This decision deprived him of the opportunity to play baseball that year, hindered his development as a player, and eliminated his chance to showcase his talents to college scouts and recruiters. As a direct result of the actions described above Plaintiff TR suffered and continues to suffer from anxiety and has been under the ongoing care of professional mental health providers. Plaintiffs Melanie and Shane Reilly suffered anxiety and distress as a result of the described actions.

28. Each of the individual Defendants is sued in his official and individual capacities. Upon information and belief, each of them was responsible for, or contributed to, the above actions as described below:

16

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a66

a. STEPHAN CATO, Athletic Director

    i. Involvement in Planning and Orchestrating Walkout: Stephan Cato was actively involved in planning and orchestrating the baseball "walkout", which was anticipated to disrupt school activities and adversely affect the plaintiff. His remarks, captured on police body cam, stating 'we knew the "walkout" was going to be bad but we didn't know how bad, that's why we called the police,' evidence his significant role in preparing for the consequences of the "walkout" and evidence his anticipatory knowledge and significant involvement in the event.

    ii. Selective Questioning at School Prom: At the school prom in 2023, Stephan Cato specifically targeted Plaintiff TR by asking if he was carrying weapons—a question he did not pose to other students, particularly White students. This selective questioning isolated the plaintiff and placed him under undue scrutiny based on unfounded suspicions.

    iii. Fabricated Accusations: Defendants Hinson, Cato, and Burchfield conspired to fabricate a story alleging that TR

17

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

failed to properly acknowledge Cato in the hallway. This accusation was unfounded, as confirmed by video surveillance showing TR's actual behavior in the hallway. The three individuals intentionally collaborated to create false accusations aiming to negatively impact TR's ability to participate in FMHS sports activities. This manipulative tactic mirrors historical racial injustices, akin to demands during the Civil Rights era that people of color adhere to oppressive and demeaning social expectations. Such an accusation not only unjustly targets TR but also resurrects the painful legacy of forcing individuals to display subservience in interactions, perpetuating a troubling racial dynamic within the school environment.

b. KYLE BURCHFIELD, Head Coach

    i. Threatening Behavior and Coercion: During a meeting on February 27, 2023, Defendant Kyle Burchfield threatened to remove TR from the team, unjustly accusing him of being a distraction. This accusation was linked to repercussions faced by CARCIOPPOLO, who had been

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a66

dismissed for using a racial slur. TR was wrongfully blamed for the coach's dismissal, despite having no influence over the coach's actions or the decisions taken in response. This baseless accusation highlights a discriminatory practice, wrongly attributing the consequences of the coach's misconduct—actions universally recognized as objectionable and independent of TR's control—to TR because of his race.

ii. Discriminatory Tactics During Gameplay: Burchfield misleadingly told TR he was pulling him from a game because he thought TR's arm was hurt, which was a pretextual and discriminatory act aimed at sidelining TR without a valid reason. TR never complained of an injury, nor were there indications of injury.

iii. Physical Aggression: On March 10, 2023, during adverse weather conditions described as a monsoon, Burchfield aggressively grabbed TR and told him to "Quit complaining!" This act was both unlawful and inappropriate physically, and psychologically belittling.

iv. Burchfield assisted in orchestrating the "walkout" in

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6f

response to his own removal from the coaching position. This action was part of a plan that publicly embarrassed and isolated Plaintiff TR, contributing to a hostile environment.

    v.    Fabricated Accusations: Defendants Hinson, Cato, and Burchfield conspired to fabricate a story alleging that TR failed to properly acknowledge Cato in the hallway. This accusation was unfounded, as confirmed by video surveillance showing TR's actual behavior in the hallway. The three individuals intentionally collaborated to create false accusations aiming to negatively impact TR's ability to participate in FMHS sports activities.

c. ALEX CARCIOPPOLO, Assistant Coach

    i.    Defendant Carcioppolo sent a racially charged text message to members of the baseball team which led to his removal as assistant coach.

    ii.    Following the incident with the offensive text message, Alex Carcioppolo deleted the message and asserted that it was sent to the wrong group. This action demonstrates a failure to acknowledge the severity of his conduct and

20

confirms his intent to use the racial slur, reflecting a significant lack of accountability.

iii. Defendant Carcioppolo actively engaged in efforts both online and in other forums to encourage students and staff to protest his removal, contributing to a divisive and hostile environment within the school community. These actions were intentionally designed to mobilize public sentiment against TR with the specific intent to harm Plaintiff TR, exacerbating tensions and directly contributing to Plaintiffs' distress and the overall disruption of school activities.

d. ROBERT HINSON

i. Planned and participated in the "walkout", exposing the plaintiff to public humiliation, disparagement, and emotional trauma.

ii. Defendant Hinson made public statements indicating that he was proud of the students for walking out, suggesting that he supported the disruption despite its negative impact on Plaintiffs.

iii. Fabricated Accusations: Defendants Hinson, Cato, and

21

Burchfield conspired to fabricate a story alleging that TR failed to properly acknowledge Cato in the hallway. This accusation was unfounded, as confirmed by video surveillance showing TR's actual behavior in the hallway. The three individuals intentionally collaborated to create false accusations aiming to negatively impact TR's ability to participate in FMHS sports activities.

e. CHRISTOPHER CHAPELL

i. Defendant Chappell planned and participated in a school "walkout", exposing Plaintiff TR to public humiliation, disparagement, and emotional trauma.

ii. Chappell, along with other school faculty and staff including Defendant Hinson, participated in the walkout. This action isolated Plaintiff TR and his only teammate of color, leaving them alone on the field. As a result, the two students faced public humiliation and significant emotional distress.

iii. As a coach responsible for the administration and management of the baseball team, Chappell failed to ensure that all laws and rules of the State Board of

22

Education were properly observed, and that school board policies were enforced and followed.

f. ROBERT BUTZ, Principal

i. Defendant Principal Butz failed to adequately address systemic issues within the school environment and failed to adequately supervise the athletic staff. Specifically, after removing Kyle Burchfield from coaching duties, Principal Robert Butz neglected to investigate the broader cultural issues within the athletic department, thereby exacerbating Plaintiff TR's isolation and distress.

ii. Cancellation of the Baseball Season: Principal Robert Butz made a decision to cancel the remainder of the baseball season following the "walkout" which had a disproportionately negative impact on the plaintiff. This decision not only minimized his playing time but also significantly reduced his opportunities to be scouted by college coaches. The abrupt end to the season deprived Plaintiff TR of crucial exposure and development in his sport, thereby hindering his athletic and academic prospects.

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6

g. CHRISTOPHER S. BERNIER, Ph.D., Superintendent

    i. Defendant Bernier eglected to enforce policies effectively. Superintendent Christopher S. Bernier failed to ensure that school policies were implemented in a manner that adequately protected students from ongoing issues, including systemic discrimination and harassment. Bernier's failed to act decisively against systemic racial issues, despite being aware of them, perpetuated a hostile environment which targeted students of color.

    ii. Defendant Bernier approved, or implicitly ratified, the actions taken by the other School District Defendants,as described above.

### CAUSES OF ACTION

### Count I: Equal Educational Opportunities Act of 1974 ("EEOA")

(Defendants School District of Lee County, Florida and the School Board of Lee County Florida)

29. Following the sending of a racist text by assistant coach Carcioppolo, an agent of the defendant School District and School Board, Carcioppolo, deleted the communication. This incident exacerbated racism among team members, leading white athletes to unjustly blame TR and the other student of color for reporting the

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6f

text to school authorities, despite lacking evidence. Team members disclosed to the Athletic Director, coaches, and school administration that racial slurs were routinely used among team members.

30. Upon learning that Plaintiff TR was targeted and subjected to racist treatment, the School District, acting through its agents, not only failed to take any remedial action or to so much as to inquire into the impact of the treatment on plaintiff TR, but, instead, indicated that Plaintiff was a problem because he was bothered by such treatment.

31. After the February 14 incident, the Defendants held a series of meetings with the players but failed to address the trauma caused by the racism directed at Plaintiff TR. Instead, they further targeted Plaintiff TR, both on the field and through reports of fabricated behavioral violations. White student-athletes were not subjected to such treatment. Observing the adults' treatment of the Plaintiff, white athletes continued to use racist and hostile language towards Plaintiff TR.

32. The encouragement of white students to treat Plaintiff TR in a racist and disparate manner included the false assertion by white students that Plaintiff TR had expressed a desire to fight another student. This alleged violation led to the summoning of Plaintiff TR's parents (Plaintiffs Shane and Melanie Reilly) to a meeting, where they were informed that the accusers had just recanted their accusations. Upon information and belief, the white students were not disciplined

25

Doc ID: 7088e12e3559f51e9e2e2a7d60ee93833e518a6f

for making false accusations against the plaintiff. Once again, the school administration treated the incident as isolated, ignoring evidence of sustained and systemic racism that continued to harm the plaintiffs.

33. The disparity persisted across all facets of athletic and educational life. TR was socially ostracized during games, team dinners, and school events—all overseen by the School District. Furthermore, students and staff directed race and color-based negative remarks, as well as comments of a retaliatory nature, towards Plaintiff TR and his parents. Additionally, the Defendants permitted other parents to directly provide financial benefits to the baseball program, bypassing the authorized Athletic Booster Club. The Club purposely excluded plaintiffs from its activities following the events described herein fostered the blaming of plaintiffs for the firing of the coaches. This Club operates in accordance with School District policy and adheres to specific rules, suggesting that such actions were taken to obscure the discrimination.

34. Furthermore, TR's parents were targeted for speaking out about the discrimination and prejudice they encountered. When they reported the unfair treatment and the widespread, accepted use of the N-word by players and coaches towards TR to the Defendants, they found themselves ostracized at parent events and deliberately excluded from communications by the Defendants. Other parents, with the Defendants' knowledge and approval, began to sponsor team events

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6f

privately rather than through the Authorized Athletic Booster Club, intentionally excluding TR's parents from these events and activities. This represented an organized effort by the Defendants to retaliate against the plaintiffs and ostracize TR and his parents, continuing to ignore the discrimination and resulting trauma.

35. The incidents, issues, and complaints continued, when, on April 5, 2023, Principal Robert Butz, an agent of defendants School District and School Board removed Burchfield from his coaching duties. Once again, Defendant School District and School Board School District took an "isolation" approach to the systemic racism evident at the school, particularly the athletic department. Instead of investigating the culture of racism and addressing the trauma and pain experienced continually by plaintiffs, Defendants sought to quickly "close the book on the incidents."

36. On the day following Coach Burchfield's removal, a baseball game was scheduled between FMHS and Estero High School. Scouts and recruiters were expected at the game to evaluate players for scholarships and university recruitment. In advance, FMHS coaches who acted as agents of defendants, staff, students, and other parents planned a "walkout" to protest the coach's removal. District faculty and staff, including Hinson and Chappell, joined the players in walking out, exposing Plaintiff TR to disparagement, public humiliation, and trauma. Plaintiff TR and another student-athlete of color were left standing alone on

27

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a66

the field, while the other players and adults entrusted with their care deliberately walked off. These two minors bore the brunt of the Defendants' discriminatory victim-blaming. Recruiters and scouts witnessed the treatment of TR and the other student of color.

37. After the "walkout", Defendants School Board and School District again failed to investigate the impact of the events on the plaintiffs. The suffering of Plaintiff TR and his parents were never considered by the Defendants, despite the outrageous nature of the event.

38. After the "walkout", the remaining games of the season were canceled. In devising a remedy for the "walkout", the Defendants School District and School Board School Board and School District did not consider the impact of this decision on Plaintiff TR. As a result, the plaintiff, who was already a victim of the staged "walkout" that isolated him and another student of color amidst racist rhetoric, faced further punishment. This decision deprived him of the opportunity to play baseball that year, hindered his development as a player, and eliminated his chance to showcase his talents to college scouts and recruiters. The School District and School Board, acting under color of law, have endorsed the discrimination, allowing it to spread and intensify within the FMHS community. The actions of the Defendants were not only insufficient to fulfill their legal obligations to TR, his parents, and others subjected to overt discrimination and retaliation, but the actions

28

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

of the Defendants also worsened the harm inflicted.

39. Defendant School District of Lee County and the School Board of Lee County Florida are bound by the provisions of the EEOA, 20 U.S.C. § 1703. Section 1703 of the EEOA states in part:

> No state shall deny equal educational opportunity to an individual on account of his or her race color sex or national origin by—
>
> > (a) the deliberate segregation by an education agency of students on the basis of race, color, or national origin among or within schools; [and]
> >
> > (b) the failure of an education agency that has formally practiced such deliberate segregation to take affirmative steps, consistent with part 4 of this subchapter, to remove the vestiges of a dual school system[.]

20 U.S.C. § 1703(a), (b).

40. Through their actions and inactions, including the act of excluding these students from equal opportunities at public school, the defendants have denied Plaintiffs equal educational opportunity an account of their color by deliberately segregating them from their peers because of their color. Defendants' specific actions which had the effect of excluding Plaintiff TR from educational opportunities including extracurricular sports opportunities include the following:

A. Fostering an atmosphere in which Assistant Coach Carcioppolo determined that sending a text including the word "nigga" was appropriate.

29

B. Failing to so much as interview the plaintiff or the other student of color in the investigation of the aforementioned text.

C. Failing to address the trauma experienced by the plaintiff due to the text and subsequent treatment of the plaintiff.

D. Tolerating harassment by team members and parents of team members of plaintiff and plaintiff's parents because of his race and complaints he and his parents made about his treatment. Through Defendants' agents, plaintiff TR and his parents were told that "everyone has suffered," or words of similar effect, ignoring the discriminatory nature of the events described and their impact on the plaintiff.

E. Treating Plaintiff in a disparate manner by not allowing him to play or giving him less desirable assignments during games because of his color and complaints about his treatment.

F. Fabricating disciplinary accusations against the plaintiff. Specifically, the plaintiff was falsely accused of failing to greet Athletic Director Cato and punished for doing so.

G. Orchestrating a "walkout" during a key game when scouts were present and leaving the plaintiff and the only other student of color standing alone on the baseball field.

H. Failing to consider the punitive impact on Plaintiff and the other student of color in canceling the baseball season.

30

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

I. Failing to consider or address the emotional impact of the walk-out on Plaintiff and the resultant trauma to him.

41. As a direct result of Defendants' actions and inactions as described in ¶¶ 29 to 40 above, plaintiff TR has suffered emotional harm. He has been under the care of psychologists as a direct result of the harm incurred and continues under that care.

42. White students were not so treated. They were not subject to harassment, were not blamed for the firings that occurred. They were not the victims of manufactured disciplinary infractions. They were not left standing alone on a baseball diamond wondering what was occurring. By virtue of creating a different athletic system for students of color such as plaintiff TR and the white students, Defendants effectively segregated these students illegally. Defendants denied Plaintiff equal educational opportunities on account of the color of his skin by failing to take appropriate action to overcome race-based barriers that impede these students' equal participation in Defendants' public-school programs.

43. Defendants' failure to take appropriate action includes but is not limited to:

- A permissive environment in which the use of derogatory racial terms was tolerated and condoned;

- Inconsistent discipline with more infractions and harsher punishments being meted out to students of color including

31

plaintiff TR

- Intentionally allowing rampant threats, hostility, and harassment to occur against students of color, including the plaintiff TR;

- Intentionally exposing students of color including the plaintiff TR to known harassment, embarrassment, and disparagement by other students, faculty, and staff;

- Retaliatory application of discipline and revisions of the Codes of Conduct unfairly targeted students of color including TR;

- Reduced playing time and canceled seasons on the basis of racism and discrimination and in retaliation for engaging in protected activities; and,

- Condoned and participated in retaliatory acts against TR and his parents by publicly humiliating and shaming TR and his parents, and condoning and/or encouraging others to do the same.

44. As a result of the Defendants' discriminatory and retaliatory conduct, they denied TR a free, non-discriminatory public education, the opportunity to learn the skills and subject matter set forth in Florida standards, and access to other activities and programs available to students enrolled in public schools, thus impacting his full learning and earning potential.

45. By failing to take appropriate action to address race and color-based harassment and discrimination, which impeded TR's equal participation in the Defendants' instructional programs, Defendants denied TR an equal education.

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6f

46. This violation of the Equal Educational Opportunities Act (EEOA) and state law was due to his color, and in retaliation against TR and his parents for engaging in protected activities. Defendants' conduct violates the rights of Plaintiffs under the EEOA. As a result of Defendants' actions and inactions, Plaintiffs have suffered and will continue to suffer irreparable harm, which includes but is not limited to the loss of education and educational opportunities provided to all through the athletic program to plaintiff, an inability to overcome illegal barriers on the basis of color, trauma, and diminished educational and future employment opportunities.

47. Plaintiffs request declaratory and injunctive relief to remedy Defendants' ongoing violations of these rights.

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

## Count II: Title VI of the Civil Rights Act of 1964

### (Defendants School District of Lee County, Florida and the School Board of Lee County Florida)

48. Title VI provides that "no person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under, or any program receiving federal funding." 42 U.S.C. §2000d.

49. As recipients of federal funding, The School District and The School Board are prohibited from discriminating or retaliating against Plaintiffs by excluding them from educational services, programs, and activities directly sponsored by the district and its component schools, failing to provide them with equal access to educational services, programs, and activities directly sponsored by the district and its component schools, or providing them with inferior services, programs, and activities directly sponsored by the district and its component schools, on the basis of their race and color.

50. Plaintiffs here repeat and incorporate by reference the factual allegations in ¶¶ 17 through 28 as though set forth herein in full.

51. Plaintiff TR suffered harassment, discrimination, and retaliation based on his color, experiencing unwelcome conduct, taunts, threats, hostile behavior, and

racially motivated hateful conduct. Title VI mandates that Defendants respond to the harassment and discrimination faced by Plaintiff TR, especially when it was severe enough to require him to seek professional care, impede his ability to participate in and benefit from the Defendants' educational programs and activities, creating a hostile and retaliatory environment. Despite being aware for months that Plaintiff was the target of racially motivated attacks and harassment—including the use of racial slurs, disparate application of rules and Codes, threatening behavior at school, and a staged "walkout"—Defendants failed to take prompt or effective steps to halt the harassment, eliminate the hostile environment, prevent its recurrence, or remedy its effects. On the contrary, Defendants portrayed Plaintiff TR as the cause of the problems faced by the baseball team, thereby tacitly encouraging other team members and their parents to target the plaintiffs with racist and derogatory language and actions. Specifically Defendants:

   a. allowed Plaintiff to be subjected to harassment from fellow students. Plaintiffs TR and his parents informed Defendants on numerous occasions of the harassment that was occuring. Defendants failed to take those complaints seriously, ignoring and trivializing the racist nature of much of the harassment.

   b. failed to address the impact of racist actions including the sending of a racist text on plaintiff TR.

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a66

c.  crafted remedies to racist actions which did not address the impact on students of color.

d.  investigated incidents of racism without interviewing plaintiffs or the other student of color who were directly and traumatically impacted by the incidents.

52. Defendants subscribed to and encouraged the view that ignoring endemic racism would allow the team to resume baseball as if nothing were amiss. Plaintiff TR and his parents were viewed as impediments to this narrative and were repeatedly targeted with racial slurs, accusations, and maligning gestures. The School District and School Board acted knowingly, intentionally, recklessly, and with deliberate indifference by not only allowing the discrimination to occur in the first place but also by permitting the retaliation after the Plaintiffs engaged in protected activity.

53.  Defendants, acting under color of state law, deprived Plaintiffs of their right to educational services, programs, and activities directly sponsored by the School District and its component schools on the basis of Plaintiff's color. Defendants acted intentionally and with deliberate indifference to the likelihood that the federally protected rights of Plaintiffs would be violated and, in fact, were violated multiple times through ongoing retaliation. Defendants wholly failed to act in a manner sufficient to prevent or address both discrimination and retaliation.

36

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6

Specifically, Plaintiff TR was discriminated against by the coach's limiting his playing time. He was targeted with manufactured disciplinary violations and he was subjected to harassment from students and their parents and targeted by Defendants's agents for disparate treatment in terms of remarks, discipline, and playing opportunities. White students were not treated in the same manner.

54. By excluding the Plaintiffs from educational services, programs, and activities directly sponsored by the School District and its component schools, and segregating them through disparate treatment, the Defendants discriminated against the Plaintiffs on the basis of their color and retaliated against the Plaintiffs for engaging in protected activity.

55. Through their actions and inactions based on color, the Defendants excluded the Plaintiffs from participation in public school education, educational services, programs, and activities directly sponsored by the School District and its component schools. Consequently, they denied the Plaintiffs the benefits of these programs, subjecting them to discrimination as set forth above.

56. The Defendants' actions and inactions have caused and will continue to cause the Plaintiffs irreparable harm. This includes but is not limited to, the loss of educational time, the loss of educational opportunities and programs, the inability to overcome color-based barriers, trauma, and diminished educational and future

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a66

employment prospects. The Defendants' conduct has caused and will continue to inflict compensable injuries upon the Plaintiffs, thereby entitling them to damages.

57.  Plaintiffs seek declaratory and injunctive relief to address these ongoing violations, in addition to compensatory damages.

### Count III: 42 U.S.C. § 1983
### Race-Based Discrimination in Violation of the
### Equal Protection Clause of the Fourteenth Amendment

(All Defendants)

58.  The 14th Amendment Equal Protection Clause provides that "No State shall make  or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of  law; nor deny to any person within its jurisdiction the equal protection of the laws."

59. Defendants, acting under color of state law, have engaged and continue to engage in a policy and practice designed to deprive Plaintiffs of their right to equal protection under the laws, as guaranteed by the 14th Amendment.

60.. Plaintiffs here repeat and incorporate by reference the factual allegations in ¶¶ 17 through 28 as though set forth herein in full.

61.  Defendants maintain a custom, a de facto policy, and practice of excluding students of color, including TR, from educational services, programs, and

38

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

activities directly sponsored by the School District and its component schools, treating these students differently. Furthermore, Defendants maintained policies and practices of discriminatory and retaliatory discipline of students based on race and color or for engaging in protected activities and voicing concerns of discrimination. They were deliberately indifferent to the perpetuation of a racially hostile educational environment and retaliated against parents and students, like Plaintiff, who complained about discrimination. These policies were adopted and enforced with the intent to discriminate and retaliate against Plaintiffs on the basis of color.

62. As a result, the Defendants denied the Plaintiffs access to educational services, programs, and activities directly sponsored by the district and its component schools, along with other opportunities available to public school students, impacting their full learning and earning potential. The Defendants' actions and inactions have led to and will continue to result in irreparable harm to the Plaintiffs. This harm includes, but is not limited to, the loss of educational and athletic opportunities, an inability to overcome racial barriers, and diminished educational and future employment prospects. Consequently, the Defendants' conduct has caused and will persist in causing compensable injuries to the Plaintiffs, entitling them to compensatory damages.

63. Plaintiffs seek declaratory and injunctive relief to address these ongoing

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6f

violations, in addition to compensatory damages.

**Count IV: 42 U.S.C. § 1983**
**Deprivation of Property Interest in Violation of the**
**Due Process Clause of the Fourteenth Amendment**

(All Defendants)

64. Through their actions and inactions, Defendants deprived Plaintiffs of their constitutionally protected property interest in a public education by denying them their right to educational services, programs, and activities directly sponsored by the district and its component schools, and access to other activities and programs available to public school students, thereby impeding their full learning and earning potential.

65. Plaintiffs here repeat and incorporate by reference the factual allegations in ¶¶ 17 through 28 as though set forth herein in full.

66. Defendants' lack of adequate procedures following the denial of these programs and services, including the cancellation of the rest of the season, was constitutionally insufficient. Defendants denied Plaintiffs the right to receive educational services, programs, and activities directly sponsored by the district and its component schools, and access to other activities and programs available to public school students, without appropriate procedures, including notice, an opportunity to be heard, or an avenue to challenge an adverse determination. As a

40

Doc ID: 7088e12e3559f51a9e2e2e7d60ee93823e518e66

result, Defendants denied Plaintiffs notice and an opportunity to be heard regarding their denial of educational services, programs, and activities directly sponsored by the district and its component schools.

67. Defendants acted pursuant to a custom, *de facto* policy, or practice in depriving Plaintiffs of educational services, programs, and activities directly sponsored by the School District and its component schools without notice or opportunity to be heard, and retaliating against Plaintiffs for voicing concerns and engaging in protected activity.

68. As a result of the Defendants' actions and inactions, Plaintiffs suffered and will continue to suffer irreparable harm, which includes, but is not limited to, the loss of education and educational opportunities provided to all through the athletic program, and the inability to overcome racial barriers, and diminished educational and future employment opportunities. Defendants' actions caused and will continue to cause Plaintiffs to suffer compensable injuries, entitling the Plaintiffs to compensatory damages.

69. Plaintiffs seek declaratory and injunctive relief to remedy these ongoing constitutional violations, and also seek compensatory damages.

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

**Count V: Florida Educational Equity Act, Fla. Stat. §§ 1000.05 et seq., and Fla. Admin. Code Ann R. 6A-19.001 et seq.**

(Defendants School District of Lee County, Florida and the School Board of Lee County Florida**)**

70. The Florida Educational Equity Act prohibits the exclusion of or discrimination against students on the basis of race. See Fla. Stat. § 1000.05(2)(a). It also provides that "No person in this state shall, on the basis of race… be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any public K-20 education program or activity… conducted by a public educational institution that receives or benefits from federal or state financial assistance." *Id.*

71. Plaintiffs here repeat and incorporate by reference the factual allegations in ¶¶ 17 through 28 as though set forth herein in full.

72. Defendants' actions and inactions to exclude Plaintiffs from educational services, programs, and activities directly sponsored by the district and its component schools, and access to other activities and programs available to public school students, violate Florida's educational equity act. Defendants' policies and practices as described herein violate the rights of Plaintiffs under the Florida Educational Equity Act. As a result of the Defendants' actions and inactions, Plaintiffs suffered and will continue to suffer irreparable harm, which includes, but

42

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

is not limited to, the loss of education and educational opportunities provided to all through the athletic program, and the inability to overcome racial barriers, and diminished educational and future employment opportunities. Defendants' actions caused and will continue to cause Plaintiffs to suffer compensable injuries, entitling the Plaintiffs to compensatory damages.

73. Plaintiffs seek declaratory and injunctive relief to remedy these ongoing violations, and also seek compensatory damages, attorneys' fees, and costs, as provided by the statute.

## Count VI: Violation of Article IX, ¶ 1 of the Florida Constitution

(Defendants School District of Lee County, Florida and the School Board of Lee County Florida)

74. As described herein, Defendants have denied and are denying students of color and parents, like Plaintiffs, equality before the law and are depriving them of their right to a uniform and high-quality education and access to equivalent educational programs and services because of their race and color in violation of Article IX, Section 1 of the Florida Constitution. As a result of these violations, Plaintiffs have suffered the harms and damages alleged herein.

75. Plaintiffs here repeat and incorporate by reference the factual allegations in ¶¶ 17 through 28 as though set forth herein in full.

43

76. As a result of these violations, Plaintiffs have suffered the harms and damages alleged herein.

### <u>Count VII Battery (Tort action under Florida Law)</u>

(Defendant Kyle Burchfield)

77. On or about March 20, 2023, Defendant Burchfield physically seized Plaintiff TR by grabbing and shaking him, while yelling "Quit complaining!" or similar words. This incident occurred when Plaintiff expressed concerns about playing during unsafe weather conditions, specifically a monsoon.

78. The contact initiated by Defendant Burchfield was harmful and offensive, constituting a battery under Florida law. This type of physical interaction would be considered harmful and offensive by any reasonable person and was executed without the consent or legal justification.

79. As a direct result of Defendant Burchfield's actions, Plaintiff TR experienced significant emotional distress, including feelings of upset, humiliation, and embarrassment. This incident exacerbated Plaintiff's sense of isolation and humiliation within the team and school environment.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court:

a. Assume jurisdiction over this matter;

b. Declare that Defendants' acts and omissions violate Plaintiffs' rights under the EEOA, Title VI of the Civil Rights Act of 1964; the 14th

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a66

Amendment Equal Protection and Due Process Clauses; the Florida Educational Equity Act; and the Florida Constitution;

c. Declare Defendants to be liable for Plaintiffs' damages;

d. Enter injunctive relief in the form of:

    i. Requiring Defendants to adopt policies, procedures, and training to end defendants' ongoing violations of the EEOA, Title VI, the US Constitution and state law, and to publicize to the community at large and to class members, in a language and form of communication that they understand those new policies and procedures;

    ii. Compensate TR for the denial of equal access to and participation in programs and activities offered by FMHS, including the baseball program; and

    iii. Requiring defendants to adopt policies and procedures to provide students with notice and an opportunity to be heard regarding educational decisions and disciplinary decisions.

e. Award compensatory damages to Plaintiffs for lost educational opportunities and employment opportunities as a result of the Defendants' conduct, and award damages for emotional distress, mental anguish, and or related emotional damages that Plaintiffs have incurred as a result of Defendants' unlawful conduct and violations of Title VI, and the Equal Protection and Due Process clauses of the 14th Amendment;

f. Award punitive damages with respect to Count VII (action in battery)

g. Award Plaintiffs reasonable attorney fees and cost pursuant to 42 USC §1988 and Fla. Stat. § 1000.05(7); and

45

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93833a518a6f

h.  Grant any other relief the court deems just in reasonable.


Respectfully submitted,

*/s/ Joseph Montgomery*_____
Joseph W. Montgomery, Esquire.
State Bar No: 120569
Montgomery Law Group, PLLC
1 U.S. Highway One, Suite 202
North Palm Beach, FL 33408
**Service email:
joe@educationlawyers.com

**ATTORNEYS FOR PLAINTIFFS**

**DATED: APRIL 22, 2024**

Doc ID: 7088e12e3559f51a9e2e2e7d60ee93833e518e6e

# **VERIFICATION**

I, MELANIE REILLY, hereby declare under penalty of perjury:

1. I am a Plaintiff in the above-captioned action.

2. I have read the foregoing Complaint and know the contents thereof.

3. The same is true of my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

4. I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 22, 2024

*Melanie Reilly*
_____
MELANIE REILLY, *Plaintiff*

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6c

# **VERIFICATION**

I, SHANE REILLY, hereby declare under penalty of perjury:

5. I am a Plaintiff in the above-captioned action.

6. I have read the foregoing Complaint and know the contents thereof.

7. The same is true of my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 22, 2024

_____
SHANE REILLY, *Plaintiff*

48

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6f

**<u>VERIFICATION</u>**

I, TR, hereby declare under penalty of perjury:

9. I am a Plaintiff in the above-captioned action.

10. I have read the foregoing Complaint and know the contents thereof.

11. The same is true of my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

12. I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 22, 2024

███████████████

_____
TR, *Plaintiff*

Doc ID: 7088a12a3559f51a9a2a2a7d60aa93823a518a6e