UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| T.R., et al. | |
| *Plaintiffs,* | CASE NO. 2:24-cv-00321 |
| vs. | |
| THE SCHOOL BOARD OF LEE COUNTY, FLORIDA; et al. | |
| *Defendants.* | |

_____

### DEFENDANTS' MOTION TO DISMISS IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT

Defendants move to dismiss Plaintiffs' Amended Complaint (Doc.10) under Rule 12(b)(6) and Rule 8(a)(2), and of the Federal Rules of Civil Procedure and pursuant to local rule 3.01(b) for the reasons stated below.

### INTRODUCTION

On April 11, 2024, this Court entered a *sua sponte* Order dismissing without prejudice Plaintiffs' Complaint (Doc. 1) as an impermissible shotgun pleading for improperly lumping all Defendants together and realleging and incorporating by reference all allegations in the preceding paragraphs of the Complaint. (Doc. 9). This Court granted Plaintiffs leave to amend to correct the foregoing deficiencies.

On April 22, 2024, Plaintiffs replead their claims for violations of the Equal Educational Opportunities Act of 1974 ("EEOA") (Count I), Title VI

of the Civil Rights Act of 1964 claims (Count II), the Equal Protection and Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 (Counts III and IV), the Florida Educational Equity Act ("FEEA") Fla. Stat. § 1000.05 (Count V), and Article IX, and Section 1 of the Florida Constitution (Count VI). Plaintiffs assert a new cause of action for battery under Florida Law (Count VII).

Plaintiffs Shane Reilly ("Dad") and Melanie Reilly ("Mom") are the parents of Plaintiff T.R., a student-athlete "of color[1]" on the FMHS baseball team. Doc. 10, ¶¶3,17. Kyle Burchfield and Alex Carcioppolo coached the baseball team at the time. *Id.* at ¶¶12,16. According to Plaintiffs, the School District[2], the School Board, the Superintendent (Christopher S. Bernier), the Athletic Director (Stephan Cato), the  Principal (Robert Butz), the head baseball coach (Kyle Burchfield), the JV baseball coach (Christopher Chapell), a teacher and coach (Robert Hinson), and assistant baseball coach (Alex Carcioppolo) each collectively and indistinctively, in their official and individual capacities, either in whole or in part, through

---

[1] No where in the Complaint do Plaintiffs state their race.

[2] The School Board is the "nominal defendant because [the School District] has no independent legal existence under Florida law." *Teets v. Hillsborough Cty. Sch. Bd.*, No. 8:15-cv-0094, 2016 WL 7115981, at *1 n.1 (M.D. Fla. Nov. 7, 2016). Florida law provides that "[t]he governing body of each school district shall be a district school board" and that "[e]ach district school board is constituted a body corporate." Fla. Stat. § 1001.40. School boards are empowered to "operate, control, and supervise all free public schools in their respective districts." § 1001.32. Perhaps most importantly, the school board is authorized to "[c]ontract, sue, and be sued." § 1001.41(4)." *Lee v. Pierre*, 9:19-CV-81631, 2020 WL 13847521, at *3 (S.D. Fla. Jan. 28, 2020).

their actions or inactions, conspired to discriminate and retaliate against based on Plaintiffs' unknown race, solely on speculation. Plaintiffs' legal conclusions about the actions or inactions of Defendants are set forth in a vacuum of contradictory plead facts.

As a threshold matter, the Complaint remains an impermissible shotgun pleading despite the Court's prior Order. Even if the Court excused these recurring defects, Plaintiffs still fail to state a plausible claim for the relief sought. Accepting all well-pleaded facts as true and drawing all permissible inferences in the Plaintiffs' favor results in but one inescapable conclusion: Plaintiffs have not, and cannot, plead any School Board action, policy, or custom caused them harm. Rather, the Complaint is a commentary of unsupported legal inferences, vague innuendos, and legal conclusions that fail to allege any particular facts of discriminatory actions by Defendants. Plaintiffs assert some 79 paragraphs that are largely irrelevant, hyperbolic, and better suited to a press release than a complaint in law, for which there are either no or contradictory facts. Accordingly, Plaintiffs' Amended Complaint should be dismissed.

**ARGUMENT**

**I.    PLAINTIFFS' COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING.**

All Counts of the Complaint should be dismissed on shotgun-pleading grounds. This Court already held that "[c]omplaints that violate

3

[] Rule 8(a)(2) . . . are often disparagingly referred to as 'shotgun pleadings.'" (Doc. 9) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). "[S]hotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Estate Mortg. Network, Inc. v. Cadrecha*, No. 11-cv-474, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing Pelletier v. Zweifel, 921 F.2d 1465, 1518 (11th Cir. 1991)).

Plaintiffs' Amended Complaint remains an impermissible shotgun pleading. First, Plaintiffs do not obviously connect their conclusory, vague, and immaterial facts to any particular cause of action and assert multiple claims against multiple defendants without specifying which defendants are responsible for which acts or omissions. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (Shotgun pleadings are due to be dismissed where a complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action", fails to separate into a different count each cause of action or claim for relief, and assets "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

Plaintiffs fail to cure their prior pleading deficiencies despite their ineffective attempt to separate some actions against others, but not all. Plaintiffs allege Counts I, II, V, and VI against Lee County School Board

4

*and* Lee County School District.[3]  Counts III and IV are alleged against *all* Defendants. Yet, Counts II-VI incorporate by reference the "factual allegations" in paragraphs 17 through 28 of the Complaint. Plaintiffs fail to allege the factual elements of their claims against each individual Defendant; in fact, there are few or no operative facts asserted against each Defendant in their respective capacities. Similarly, Plaintiffs do not separate into different counts what cause of action or claim for relief is against which Defendant. Nor do the Plaintiffs separate which actions cause of actions are against the Defendants in their individual versus official capacities. Each theory requires a separate legal and factual analysis.[4] Plaintiffs do not identify which particular Defendant's conduct is linked to which particular capacity, claim, or harm.[5]

Finally, the Complaint suffers from an additional problem: it does not clearly separate the claims and injuries of Dad, Mom, and T.R. What legally protected interest did Dad and Mom versus T.R. suffer, and at whose hand? Plaintiffs apparently posit that the reader should just accept the conclusory conflation that all Plaintiffs have somehow been harmed by

---

[3] As Plaintiffs take that position that the School Board and the School District are separate and distinct legal entities, though legally incorrect Defendants' address the allegations using the terms in the Complaint.

[4] As discussed *infra*, suits against government officials in their official capacities is in actuality a suit against the government entity (the School Board). School board officials in their individual capacities can raise qualified immunity as a defense.

[5] See discussion *infra*. For example, Plaintiffs do not allege how Superintended Christopher S. Bernier allegedly violated any of Plaintiffs' rights.

5

all Defendants, without specifying who or how. *Cf., Gharfeh v. Carnival Corp.*, No. 17-20499-CIV, 2018 WL 501270, *6 (S.D. Fla. Jan. 22, 2018) (dismissing as shotgun pleading complaint that combined theories of *respondeat superior* and direct negligence into a single count).

Plaintiffs should "make clear exactly who is alleged to have done what to whom, to provide each [party] with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 564 n. 10); *cf. Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("[I]t is necessary to isolate the precise constitutional violation with which he is charged."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that this is certainly required before a "plausible" claim for discrimination is asserted against each defendant). Plaintiffs' conflated manner in pleading all harms, against all Defendants, without clearly delineating the factual grounds under each legal theory prejudices Defendants' ability to adequately frame a response. This defect requires dismissal or, at minimum, a more definitive statement. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 983-84 (11th Cir. 2008) ("Where, as here, the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b).").

## II. PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS OF AN EEOA, TITLE VI, OR EQUAL PROTECTION CLAIM.

### A. Applicable Standard.

Plaintiffs' legal theories under Counts I, II, and III all require a causal connection between some racially discriminatory animus action by Defendants and Plaintiffs' pleaded harm. An EEOA claim (Count I) and Title VI claim (Count II) are analyzed identically to an equal protection claim (Count III). *Elston v. Talladega County Bd. of Educ.,* 997 F.2d 1394, 1405–06 n. 11 (11th Cir. 1993)("Since Title VI itself provides no more protection than the equal protection clause—both provisions bar only intentional discrimination—we will not engage in a separate discussion of the Title VI statutory claims, as such an inquiry would duplicate exactly our equal protection analysis"); *Groves v. Alabama State Bd. of Educ.,* 776 F. Supp. 1518, 1519 (M.D. Ala. 1991) (saying the EEOA "do[es] not afford any greater protection to plaintiffs in this case than does Title VI."); *Ren v. University of Cent. Florida Bd. of Trustees,* M.D.Fla.2005, 390 F.Supp.2d 1223, affirmed 179 Fed.Appx. 680, 2006 WL 1214454.

### B. Plaintiffs Allege Neither a Discriminatory Animus or Deliberate Indifference by the School Board Nor a Causal Link Between any Ostensible Animus and Alleged Harm.

To establish an equal protection clause, Plaintiffs must demonstrate (1) an action by the School Board or a school official with final policy-making authority that was *motivated by an intent to discriminate* against

Plaintiffs based on their race or (2) the School Board had a policy or practice that had a disparate impact on Plaintiffs based on their race. *Elston*, 997 F.2d at 1406. Under the second theory, Plaintiffs must show "a causal link between the defendant's challenged practice and the disparate impact identified." *Id.* Plaintiffs vaguely allege the following events are the basis for their discrimination claims:

   *1. The February 14, 2023 Text Message.*

On February 14, 2023, Coach Carcioppolo, in his unofficial capacity, mistakenly sent a group text message to the baseball team and coaching staff that included a perceived racial slur, which was immediately deleted (the "text message"). Doc. 10, ¶¶17-18 Unknown persons reported the text message to school authorities, which led to an investigation and a series of meetings with players. *Id.* at ¶¶20,19. Coach Carcioppolo and Coach Burchfield were ultimately removed from their positions. *Id.* at ¶¶4, 20, 24, 28.

   *2. False assertions.*

Plaintiffs claim "white students" falsely accused T.R. of "express[ing] a desire to fight another student," which they later recanted. *Id.* at ¶21. No action was taken against T.R. or the other students. *Id.* Plaintiffs contend this is "evidence of sustained and systemic racism." *Id.*

8

*3. Athletic Booster Club.*

Plaintiffs claim the School District permitted "other parents to directly provide financial benefits to the baseball program, bypassing the authorized Athletic Booster Club" - "suggesting that such actions were taken to obscure the discrimination." *Id.* at ¶22. *Funding* a baseball program does not deprive one of their equal protection rights. Plaintiffs also vaguely conclude they were "socially ostracized" - not by the School Board - but by others at *parent events. Id.* at ¶34. Plaintiffs do not explain further how other parents failing to invite Mom and Dad to *private* events is an actionable equal protection claim against the Defendants. *Id.* at ¶23. Title VI does not impose liability on school districts for parent-on-parent harassment absent facts of deliberate indifference. *See Adams v. Demopolis City Sch.*, 80 F.4th 1259, 1273 (11th Cir. 2023)(a plaintiff must show deliberately indifferent to known acts of *student-on-student* racial harassment.).

*4. The April 6, 2023 "Walk-out".*

Plaintiffs allege that the day after Principal Butz removed Burchfield as coach, staff, students, and other parents walked out of a scheduled baseball game to "*protest the coach's removal*" (the "walk-out"). *Id.* at ¶25. In response to the walk-out, the school canceled the remaining games of the season. *Id.* at ¶27.

On its face, the Complaint fails to plead facts allowing an inference of intentional discrimination by Defendants towards T.R., let alone Mom and Dad. To avoid dismissal under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the "factual allegations must be enough to raise a right to relief above the speculative level... ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal marks omitted). Likewise, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Plaintiffs' heavy reliance on the text message and the walk-out are insufficient to raise an equal protection claim, even when combined with Plaintiff's other allegations, to reasonably infer that the School Board had a policy or practice condoning racial discrimination. Plaintiffs concede that school staff held numerous meetings after the text message to address the conduct and concerns - ultimately leading to Carcioppolo and Burchfield's removal. Furthermore, Plaintiffs allege that the walk-out was to "protest

the coach's removal" – a right protected under the First Amendment – not because of Plaintiffs race (which we do not know).

Plaintiffs do not otherwise, beyond vague innuendos, attempt to explain how or who retaliated against Plaintiffs because of their race besides their conclusory theories. Plaintiffs even fail to allege facts as to what their protected class is. Nevertheless, Plaintiffs have not pled particular facts to any dissimilar treatment from others similarly situated based on their race, other than theories and conclusions. The Eleventh Circuit applies the "similarly situated" requirement with rigor "to maintain the focus on discrimination and to avoid constitutionalizing every state regulatory dispute." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007). "Different treatment of dissimilarly situated persons does not violate the equal protection clause." *E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987).

Plaintiffs allege no discriminatory animus other than their unsupported conclusions and speculation. "In considering whether conduct raises to the level of arbitrary or conscience-shocking, deliberate indifference, without more, is rarely a basis for substantive due process liability in cases arising in the school context." *Adams*, 80 F.4th at 1274. Dismissal would still be appropriate even if, assuming solely for the sake of argument, Plaintiffs identified some animus attributable to Mr.

11

Carcioppolo. As pled, Mr. Carcioppolo is not a member of the School Board nor has final policy-making authority. "Final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Scala v. City of Winter Park,* 116 F.3d 1396, 1401 (11th Cir. 1997). Nevertheless, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated … remains with the plaintiff." *Curlee v. Birmingham Bd. of Educ.,* CV-11-BE-04052-S, 2013 WL 3357133, at *5 (N.D. Ala. June 28, 2013) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 251–52 (1981).

### III. PLAINTIFFS FAIL TO STATE A SECTION 1983 CLAIM AGAINST THE SCHOOL BOARD.

A municipality can be sued directly under § 1983 only when one of its customs, practices, or policies causes a constitutional injury. *Barnett v. MacArthur,* 956 F.3d 1291, 1296 (11th Cir. 2020) (A municipality can only be sued directly under § 1983 when one of its customs). Plaintiffs fail to allege facts that the School Board or school official enacted a policy or practice with animus toward Plaintiffs' race. Rather, Plaintiffs asserted largely "redundant, immaterial, impertinent, or scandalous matter," and are due to be struck. Fed. R. Civ. P. 12(f). Even taken together, these paragraphs fail to state a claim.

No operative facts are alleged against the School Board other than the allegation that the School Board is a public school system and local educational agency in Fort Myers, Lee County, Florida. Doc. 10, ¶¶8-9. Indeed, as Plaintiffs allude, the school investigated and addressed the isolated incidents at issue and took remedial action. Doc. 10, ¶¶4, 19, 20, 24, 28. Plaintiffs do not argue that the School Board took no action to address the text message or the walk-out—which they did—but instead that Plaintiff merely disagreed with the manner and outcome of the investigation because it did not comport with their subjective needs. *Id.* at ¶35.

Plaintiffs are not entitled to investigation of their choosing in the manner they deem sufficient. Nor are Plaintiffs entitled to the corrective actions or specific remedies of their choosing based on vague, conclusory allegations of acts not uncovered through external investigations.  Simply because Plaintiffs do not like the Board's policy or decision not to consider such factors does not mean that the Board acted in bad faith or that the policy is unfair, and it certainly does not show that it is discriminatory. "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions,'" and the court will not make such a judgment in this case about whether the Board's policy is wise.

13

*Curlee*, WL 3357133, at *6 (citing *Elrod v. Sears*, Roebuck & Co., 939 F.2d 1466 (11 Cir.1991) (internal citation omitted).

As noted above, the factual allegations against the individual defendants are insufficient to impose liability on the School Board. A municipal body is only liable for its own violations of constitutional rights and is not vicariously liable for the injuries caused by those acting on its behalf. School employees are not the alter ego of the School Board unless the School Board has delegated its power to them. *Board. Beck v. Littlefield*, 68 So.2d 889 (Fla. 1953)(explaining that a local government speaks only through its official actions and minutes). The comments of a few individual employees cannot legally be ascribed to the board as whole, nor to its superintendent. *Id.; Mason v. Vill. of El Portal*, 240 F.3d 1337, 1340 (11th Cir. 2001). "A member or employee of a governing body is a final policy maker only if [1] his decisions have legal effect without further action by the governing body, and . . . [2] the governing body lacks the power to reverse the member or employee's decision." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004)(internal citations omitted). No such facts are alleged here.

Plaintiffs do not allege that any of the athletic staff had any final policymaking authority. *Gattis v. Brice*, 136 F.3d 724, 727 (11th Cir. 1998)("A policymaker's approval of an unconstitutional action can

14

constitute unconstitutional [local government] policy only when the policymaker 'approves a subordinate's decision and the basis for it.'")(internal marks omitted); *Clark v. Sch. Bd. of Collier Cnty., Florida*, 213CV820FTM29MRM, 2016 WL 1617920, at *4 (M.D. Fla. Apr. 22, 2016)(saying, "ratification must be of the basis for the decision, not just the decision itself").

In sum, no operative facts are alleged against the School Board other than the allegation that it oversees public schools in Lee County, Florida. Doc. 10, ¶9. The purpose of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978) and progeny is to place liability where it belongs. There are no facts alleged of official actions that may be fairly attributable to the entity. Rather, the Plaintiffs must specifically identify a School Board policy or custom that deprived Plaintiffs of their constitutional rights. *Davis*, 233 F.3d at 1375. This requirement ensures that liability will not be based on an isolated incident or pattern that is not proximately caused by the local government. *McDowell v. Brown,* 392 F.3d 1283, 1290 (11th Cir. 2004). Plaintiffs' inadequate allegations regarding the School Board do not give rise to a legally cognizable claim, let alone justify the legal conclusion that the School Board tolerated or condoned discrimination, retaliated against T.R. or his parents, or otherwise violated Plaintiffs' rights.

15

## IV.   PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS AGAINST THE INDIVIDUAL DEFENDANTS FOR RELIEF TO BE GRANTED.

Plaintiffs assert Count III (violation of equal protection) and Count IV (violation of due process) collectively against Defendants Stephan Cato, Kyle Burchfield, Alex Carcioppolo, Robert Hinson, Christopher Chapell, Robert Butz, and Christopher S. Bernier in their official and individual capacities, as well as against the School Board. Doc. 10, ¶¶10-16.

### A.   Claims Against Individual Defendants in Their Official Capacities are Duplicative of Claims Against the School Board.

Counts III and IV are duplicative and should be dismissed because a suit against government officials in their official capacities is, in actuality, a suit against the government entity (the School Board). *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (affirming directed verdict against city officers sued in their official capacity because "keep[ing] both the City and the officers sued in their official capacity as defendants in [the] case would have been redundant and possibly confusing to the jury"). Furthermore, Plaintiffs fail to allege that the individual Defendants have final policy-making authority and fail to state a claim for the relief sought.

### B.   Plaintiffs Fail to State a § 1983 Claim against the Individual Defendants.

16

To be held liable individually, a person has to be the decisionmaker. *Kamensky v. Dean*, 148 F. App'x 878, 879 (11th Cir. 2005) (quoting *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1326 (11th Cir. 2003)). However, government officials have qualified immunity against section 1983 claims if they have acted in good faith in carrying out their duties. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985).

### i. *Christopher S. Bernier*

No operative facts are alleged against Bernier other than the allegation that he is the Superintendent of FMHS. Doc. 10, ¶10. Plaintiffs vaguely conclude that Bernier "failed to act decisively against systemic racial issues, despite being aware of them...." *Id.* at ¶ 28(g). Plaintiffs fail to plead how or what systemic racial issues Bernier was aware of. Being a Superintendent does not alone establish any legally cognizable claim of individual liability.

### ii. *Robert Butz*

No operative facts are alleged against Butz other than the allegation that he is the Principal of FMHS who removed Burchfield from his coaching duties. *Id.* at ¶¶14, 24, 28(f). It is impossible to imagine how removing Burchfield from his coaching duties is Constitutionally actionable. If

anything, by removing Burchfield for any alleged discriminatory act, FMHS did not condone such behavior.

### iii.   Stephan Cato

No operative facts are alleged that establish any legally cognizable claim of individual liability against Cato. Plaintiffs vaguely claim that Cato violated their equal protection or due process rights by (1) being present at the park where the walk-out occurred and (2) questioning T.R. at Prom about whether he was carrying weapons. *Id.* at ¶ 28.

Plaintiffs speculate that Cato was "actively involved in planning and orchestrating" the walk-out because he called law enforcement to inform them that the "'walk-out' was going to be bad." *Id.* If anything, Cato took active steps to stop the walk-out and address any repercussions by calling law enforcement. Plaintiffs do not allege any unjustified search occurred regarding Cato questioning T.R. about weapons. There is no constitutional right to be free from questioning, especially in the school context.

Nevertheless, Cato was acting within the scope of his discretionary authority when he questioned T.R. and is immune from liability under this theory. *Craig v. Selma City Sch. Bd.*, 801 F. Supp. 585, 596–97 (S.D. Ala. 1992)(no constitutional violation where "closely monitoring students who have been involved in a series of fights is legitimate, and that 'strict conduct probation' is rationally related to achieving this legitimate

18

objective."). Certainly, Mom and Dad have alleged no basis for a violation of their rights due to Cato's actions.

### iv.    *Robert Hinson/ Stephan Cato/ Kyle Burchfield*

Plaintiffs surmise that Hinson, Cato, and Burchfield "conspired to fabricate a story alleging that T.R. failed to properly acknowledge Cato in the hallway." Doc. 10, ¶28. No further adequate facts or detail is provided. Plaintiffs make no allegations that this "false accusation" was due to T.R.'s race or that he faced any disciplinary action. Nor do Plaintiffs allege which Defendant made the alleged "false accusation."

### v. *Christopher Chapell/ Robert Hinson*

Plaintiffs allege that Chapell and Hinson "joined the players walking out" to support their discrimination claims. *Id.* at ¶¶25, 28(d)-(e). Plaintiffs then claim that Hinson made statements *indicating* that he was "proud of the students for walking out." *Id.* at ¶ 28(d)(ii)). Even if true, these sparse allegations do not establish any legally cognizable claim for discrimination as Plaintiffs concede that the walk-out was to "protest the coach's removal." *Id.* at ¶ 25. Defendants do not lose their right to free speech merely because they are school employees.

### vi.    *Kyle Burchfield*

Plaintiffs claim Burchfield violated their constitutional rights by (1) *threatening* to remove T.R. from the team for being a "distraction," (2)

19

removing T.R. from a game because Burchfield believed T.R.'s arm was hurt, and (3) "orchestrating" the walk-out. *Id.* at ¶ 28(b). These facts do not support a claim for intentional discrimination beyond the Plaintiffs own speculations and conclusions. No reasonable inference can be made that, but for the Plaintiffs' race, these actions would not have occurred. Even accepting if true, Burchfield was acting within the scope of his discretionary authority and is immune from liability under this theory.

vii.   Alex Carcioppolo

As stated, Carcioppolo mistakenly sent a racially charged text message to members of the baseball team, leading to his removal as assistant coach. *Id.* at ¶28(c).  This isolated incident alone does not raise a reasonable inference that the School Board approved of Carcioppolo's actions or tolerated racial discrimination, especially when Carcioppolo was fired the following day.

In essence, Plaintiffs have set forth nothing more than a *post hoc ergo propter hoc* argument for the walk-out, which is a logical fallacy. Without more—and Count III and Count IV do not provide more—it cannot be logically inferred that the Defendants intentionally discriminated against Plaintiffs because of their race. Plaintiffs only speculate that their race was the "but for" cause of Defendants' actions. *See DeMartini v. Town of Gulf*

20

*Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) (noting that retaliatory action is "easy to allege and hard to disprove").

In conclusion, the purpose of *Monell* and progeny is to place liability where it belongs; and the purpose of individual liability is to ensure that, when the local government is not liable, recoverable liability falls to the responsible government official. Thus, even if Plaintiffs had alleged sufficient facts against any school official—and they did not—it would be pointless and redundant to adjudicate claims against the individuals. Moreover, even if Plaintiffs had alleged sufficient facts, the individual-capacity claims would still fail because the individual defendants are entitled to immunity as a matter of law.

None of these allegations amount to intentional discrimination, let alone School Board sanctioned actions. Because Plaintiffs have failed to plead plausible operative facts showing that they are entitled to relief against any individual defendant, the individual-capacity claims should be dismissed.

## C.  The Individual Defendants are Entitled to Qualified Immunity.

The individual Defendants should be dismissed from this lawsuit because they enjoy qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established

21

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1393 (11th Cir. 1993); *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988).

"[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). Plaintiffs must then show that Defendants "violated a clearly established statutory or constitutional right . . . ." *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003). "The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *James*, 57 F.3d at 1282.

There can be no dispute here that each individual defendant was acting within their discretionary duties: for Superintendent Bernier, implementing school policies; for Principal Butz, removing coaches and canceling the baseball season; for Athletic Director Cato, being present at a park during an athletic event, calling law enforcement for crowd control at an athletic event, supervising students at prom, reporting student conduct; for teacher and coach Hinson, being present at a park during an

22

athletic event and reporting student conduct; for Coach Burchfield, monitoring player and safety conduct during athletic events, removing players from games, and reporting student conduct. But no facts of a violation of clearly established laws are plausibly alleged.

## V.   PLAINTIFFS FAIL TO STATE A EEOA CLAIM UNDER SECTION 1703.

For a violation of the Equal Educational Opportunities Act (EEOA), there must first be a finding that there are vestiges of the former dual school system and that the educational agency that formerly practiced deliberate segregation failed to take affirmative steps to remove those vestiges. 20 U.S.C.A. § 1703(b). "Section 1703(b) is violated if a school district that formerly practiced segregation fails to take affirmative steps to remove the vestiges of a dual school system, defined as one that assigns students to schools on the basis of race or other impermissible criteria.... [T]here must ... be a finding that there are vestiges of the former dual school system and that the educational agency failed to take affirmative steps ... to remove those vestiges." *Jackson v. Waller Indep. Sch. Dist., No. H-07-3086, 2009 WL 3078489, at *14 (S.D. Tex. Sept. 24, 2009).* "The causal link between current conditions and the prior violation is even more attenuated if the school district has demonstrated its good faith." *Freeman v. Pitts*, 503 U.S. 467, 496 (1992). Plaintiffs do not allege the existence of former deliberate

23

segregation and that the School Board failed to take affirmative steps to remove those vestiges.

Furthermore, Plaintiffs do not allege how or what equal educational opportunities Plaintiffs were denied. *Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*, 461 F. Supp. 3d 280, 302 (E.D. Va. 2020). T.R. was on the baseball team. No reasonable inference can be inferred that the cancellation of the remaining season (at the end of the season) denied Plaintiffs equal educational opportunities. The season was cancelled for *all* players.

Nor does the Complaint make factual allegations that there was any deliberate segregation or discrimination by school officials. Conversely, the School Board had strict policies against discrimination, took those policies seriously by extensively investigating complaints of discrimination, and enforced those policies, including, but not limited to, firing both the coach and assistant coach. Moreover, Mom and Dad failed to allege sufficient facts that they have standing to bring individual EEOA claims or any denial of equal access to education. In any event, the Plaintiffs' EEOA claim should be dismissed for the same reasons as their equal protection and Title VI claims.

### VI. PLAINTIFFS FAIL TO ALLEGE A DUE PROCESS VIOLATION.

Count IV alleges that Defendants violated their procedural due process rights by canceling the entire baseball season without adequate

24

notice before. Doc. 10, ¶52. Education is not a fundamental right for purposes of equal protection analysis. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973). Because there is no explicit or fundamental constitutional right to an education – even less a right to play an entire baseball season - due process claims are subject to "rational basis" scrutiny. *Plyler v. Doe*, 457 U.S. 202, 220–21, 102 S.Ct. 2382, 2396, 72 L.Ed.2d 786 (1982); *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985) (when a court entertains a substantive due process challenge to an academic decision, it "may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment"). Plaintiffs give no facts as to how the notice was inadequate, the cancellation was "fundamentally" unfair, or the process leading up to these decisions was insufficient. Thus, they fail to allege a violation of due process.

## VII.   PLAINTIFFS PENDENT STATE LAW CLAIM.

### A. Plaintiff's fails to state a claim of a violation of FEEA (Count V) and Article IX, Section I of the Florida Constitution (Count VI).

Plaintiff's FEEA (Count V) and Article IX, Section I of the Florida Constitution (Count VI) claims are due to be dismissed for the same

25

reasons their Title VI and equal protection claims are insufficient.[6] In addition, Plaintiffs' fail to allege sufficient facts that the School Board failed to "make adequate provision" for T.R.'s education in violation of Article IX, Section I. The rarity of the facts alleged narrowly pertains only to athletics.  Specifically, T.R. could not finish the remainder of the baseball season. This claim falls significantly short of inferring an equal access violation.

Furthermore, Mom and Dad lack standing to bring individual claims under Article IX, Section I and the FEEA. Mom and Dad were neither students nor employees of a state education system. Fla. Stat. § 1000.05(2)(a) (prohibiting discrimination against a "student or an employee in the state system of public K-20 education."). Thus, Plaintiffs fail to state a claim that they are entitled to the relief sought.

## B. Plaintiff's Battery Claim (Count VII).

i.    *The Court lacks subject matter jurisdiction over Count VII.*

This Court does not have subject matter jurisdiction over Count VII. Plaintiffs only exercise supplemental and pendent jurisdiction under 28 U.S.C. §1367(a) for their FEEA claim. Doc. 10, ¶5. Plaintiffs fail to allege that Count VII arose from the same common nucleus of operative facts as

---

[6] The analysis of discrimination claims is applicable to claims brought under Florida Educational Equity Act (FEEA). *Ren v. University of Cent. Florida Bd. of Trustees*, M.D.Fla.2005, 390 F.Supp.2d 1223, affirmed 179 Fed.Appx. 680, 2006 WL 1214454.

26

their discrimination claims. Thus, this Court lacks subject matter jurisdiction over Plaintiffs' battery claim.

### ii.    *Defendant Burchfield is entitled to Sovereign Immunity.*

The doctrine of sovereign immunity generally protects government officials, including school employees. Sect. 768.28, Fla. Stat. (2024). Therefore, a state law claim alleging battery by Burchfield is due to be dismissed.

### iii.    *Count VII violates this Court's order permitting amendment.*

Count VII of the Complaint should be dismissed for violating this Court's order dismissing the first complaint. The Court dismissed the first complaint (Doc. 9) for being an impermissible shotgun pleading and for improperly lumping all Defendants together, as they do again in the Amended Complaint. Because "Plaintiffs' second through sixth claims for relief 'reallege and incorporate by reference' all allegations in the preceding paragraphs of the Complaint," the Court granted Plaintiffs leave to amend to "correct[] the foregoing deficiencies." *Id.*

Despite that instruction, Plaintiffs have pleaded a new cause of action in Count VII without the Court's leave. In addition to the original discrimination claims, Count VII now alleges a separate battery claim under Florida law. The battery claim is entirely separate and distinct from the discrimination claims and was not previously pleaded. Plaintiffs'

27

disregard for this Court's order warrants striking the battery claim. *See, e.g., Hill v. Allianz Life Ins. Co. of N. Am.,* 2015 WL 12838838, at \*4 (M.D. Fla. June 17, 2015) (striking amended complaint for asserting claims that exceeded scope of court's order permitting amendment); *see also Cincinnati Ins. Co. v. Cochran,* 2006 WL 4495335, at \*3 (11th Cir. Dec. 27, 2006) (same). Finally, because Plaintiffs' federal claims are due to be dismissed, their state-law claims may likewise be dismissed. *See, e.g., Skurstenis v. Jones,* 139 F. Supp. 2d 1291, 1293 (N.D. Ala. 2001) ("[W]hen federal claims are dismissed before trial, the preferred course for a federal court to follow is to decline jurisdiction over the state-law claims . . . .").

## CONCLUSION

This Court should grant the motion and dismiss Plaintiffs' Complaint. Plaintiffs fail to show that any alleged grievances arise from a discriminatory animus by Defendants or a School Board practice or policy. Plaintiff's conclusory; threadbare allegations are insufficient to state a claim against Defendants. Accordingly, the Complaint is due to be dismissed.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendants certifies that she conferred with counsel for Plaintiffs, regarding this Motion. Plaintiffs' counsel was unable to agree in good faith to the relief sought.

28

Respectfully submitted,

*s/ Mikala A. Makar*
MIKALA A. MAKAR
Florida Bar No. 1025225
JAMES D. FOX
Florida Bar No. 689289
ROETZEL & ANDRESS, LPA
999 Vanderbilt Beach Rd., Suite 401
Naples, FL  34108
(239) 649-6200
mmakar@ralaw.com
serve.mmakar@ralaw.com
jfox@ralaw.com
serve.jfox@ralaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2024 this document was electronically transmitted to the Clerk of Court via the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*s/ Mikala A. Makar*
Mikala A. Makar

29