**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

TR, *et al*.,

              *Plaintiffs,*

      v.

THE SCHOOL DISTRICT OF LEE
COUNTY, FLORIDA, *et al.*,

              *Defendants.*

_____/

CASE NO:
**24-00321-cv-ALTONAGA**

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

## I.    INTRODUCTION

Defendants' motion to dismiss or, in the alternative, for a more definite statement should be denied in its entirety, inasmuch as it mischaracterizes the facts alleged in Plaintiffs' First Amended Complaint; relies on case law which is not applicable to consideration of a dismissal of a complaint; and relies on non-controlling legal authority. The factual basis for Plaintiffs' claims are stated in the First Amended Complaint, particularly in relation to the racially discriminatory conduct directed at Plaintiff T.R., a student of color, and his family (Amd. Comp., ¶¶ 17-28). Each of these issues will be discussed in greater detail herein.

## II.    SUMMARY OF FACTS

The factual core of Plaintiffs' claims can be found in paragraphs 17 through 28 and 43 of the Amended Complaint (ECF No. 10). Because the present motion arises under Rule of Civil Procedure 12(b)(6), Plaintiffs rely on the facts as stated in their Amended Complaint. However, since Defendants contend that Plaintiffs have not alleged sufficient facts, Plaintiffs offer the following précis of the facts that gave rise to the instant matter. The facts alleged in the Amended Complaint describe specific incidents of racial discrimination and harassment experienced by Plaintiff T.R. during his time as a student-athlete at FMHS, supported by clear examples of racial bias. (Amd. Comp. ¶¶ 17-28.)

Plaintiff T.R., a person of color, was a minor at the time of the events described in the complaint and was under the care of the Defendant, the School District of Lee County, Florida (the "District"), and its agents. Plaintiffs Melanie Reilly ("M.R.") and Shane Reilly ("S.R.") are the parents and natural guardians of T.R., who reached the age of majority in May of 2024. (Amd. Comp. ¶ 3.) During the 2022-23 school year, Plaintiff T.R. was a student-athlete on the varsity baseball team at Ft. Myers High School (FMHS) and was one of only two non-white students on the team. (Amd. Comp. ¶ 2.)

The event that sparked a torrent of racial harassment and retaliation was a blatantly incendiary text authored by the FMHS baseball coach, Alex Carcioppolo,

and delivered to the cellphones of the coaches and players of the baseball team on February 14, 2023. Defendant Carcioppolo wrote, "Happy Valentine's Day niggas," for reasons that remain unclear. (Amd. Comp. ¶ 17.) Carcioppolo clearly recognized the explosive nature of the text; within minutes of its delivery, he attempted to cover his tracks by 'unsending' the message and deleting it from all recipients' inboxes. (Amd. Comp. ¶ 18.)

However, screenshots were captured before the message disappeared, preserving evidence of the offensive text before Carcioppolo could hide what he had done. The offensive text, employing a derogatory term with a long and painful history of cruelty, both resulted from and exposed a school environment permeated with racism, which substantially and negatively affected individuals of color, including Plaintiff T.R. (Amd. Comp. ¶ 18.)

T.R. was one of only two individuals of color[1] on the varsity baseball team. Following the sending of the text, Defendants failed to reach out to the two students of color (including Plaintiff T.R.) on the team and blatantly ignored the harm caused. This omission sent a clear signal and reinforced an atmosphere of

---

[1] Defendants have criticized Plaintiffs for not definitively stating the race of each of the two teenagers who were the direct victims of what became a racially charged campaign. What matters, for purposes of Plaintiffs' complaint, is that each of the boys is not Caucasian, identifies as a person of color and is therefore a member of a small minority of FMHS students. The great majority of the varsity baseball players, like a majority of FMHS students, are and identify as white.

3

racism, causing a painful daily experience for Plaintiff T.R. and, as events continued to unfold, foreclosed future opportunities for T.R. (Amd. Comp. ¶¶ 2, 3, 17-18, 21-22.)

Rather than conducting an investigation that acknowledged the harm and trauma caused by the objectively racist text, Defendants, including FMHS and the School Board, responded in a manner that deflected attention away from the offensive nature of the message. Instead, they tacitly encouraged a response that placed blame on Plaintiff T.R. and M.T., the other student of color, by suggesting that their reaction to the incident was the problem, thereby labeling them as "troublemakers" within the team and the school community. This approach by the Defendants created an environment where the focus shifted away from the inappropriate actions of the coaching staff and toward the students who were affected by the racist message. (Amd. Comp. ¶¶ 21-22, 25.) What followed the Valentine's Day text was months of gaslighting, micro- and macro-aggressions, and targeted harassment of T.R., rooted in the belief that if there hadn't been a student of color on the group text, Coach Alex would not have been fired. As noted in the complaint, white athletes falsely blamed Plaintiff T.R. and the other student of color for reporting the offensive message, which led to further racial hostility and isolation directed towards them. (Amd. Comp. ¶ 18.) These painful days for T.R. reached a breaking point when the team coaches and managers, most of whom are

4

individual Defendants in this action, deliberately isolated the two students of color during a carefully orchestrated "walkout" on April 6, 2023, allegedly in protest of disciplinary action taken against Burchfield (the head coach). During the "walkout," Plaintiff T.R. and another student of color were deliberately left on the field, subjected to public humiliation, as white teammates and staff walked out in protest, leaving the two students vulnerable to racist remarks and taunts from spectators and others. (Amd. Comp. ¶¶ 25-27.) College scouts and recruiters, who were present at the game, witnessed the discriminatory treatment of T.R., which further impacted his athletic and educational opportunities.

On that day, during a game against the Estero Wildcats as part of the annual "Battle of the Border" tournament, the FMHS coaches and managers abandoned Plaintiff T.R. and another student of color on the field, leaving them vulnerable to a barrage of racist and derogatory remarks from spectators and other players. (Amd. Comp. ¶¶ 25-27.)

The complaint specifies that, "Plaintiff T.R. and another student-athlete of color were left standing alone on the field, while the other players and adults entrusted with their care deliberately walked off." (Amd. Comp. ¶ 25.) Once again, Defendants made no effort to address or mitigate the harmful effects of this treatment on the minors involved, further perpetuating the discriminatory and hostile environment. (Amd. Comp. ¶¶ 25-26.) Subsequent meetings held by the

school administration "failed to address the trauma caused by the racism directed at Plaintiff T.R.," dismissing the emotional toll and damage suffered by T.R. (Amd. Comp. ¶ 20.)

Following the February 14 text, Plaintiff T.R.'s senior year of high school and final season of varsity baseball was marked by increasingly targeted actions by the school, both on the field and through fabricated behavioral violation reports. White student-athletes were not subjected to such punitive treatment, as "[w]hite athletes continued to use racist and hostile language towards Plaintiff T.R. without facing any disciplinary actions." (Amd. Comp. ¶ 20.) This hostile environment fostered a culture where students and parents were encouraged to treat Plaintiffs differently based on their race. (Amd. Comp. ¶¶ 19-20, 22.)

Plaintiffs M.R. and S.R. also faced disparate treatment, including racist taunts and exclusion from school-related functions, particularly following their efforts to advocate on behalf of their son. (Amd. Comp. ¶ 23)

## III.   STANDARD OF REVIEW

Under Rule 8(a)(2), the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to

dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (abrogating *Conley,* 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556). "The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover." See *Linder v. Portocarrero,* 963 F.2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston,* 376 F.2d 43 (5th Cir. 1967)), as quoted in *Anderson v. Radiology Consultants of Hollywood, Inc.,* No. 17-61969-CIV, 2018 WL 11511639, at *1 (S.D. Fla. Jan. 19, 2018).

## IV.    ARGUMENT

### A. Plaintiffs' Amended Complaint is Not an Impermissible "Shotgun Pleading" in Violation of Federal Rules.

Plaintiffs' amended complaint is replete with facts supporting their causes of action. For example, specific instances of racial discrimination and retaliation against Plaintiff T.R. and his family are outlined in detail (Amd. Comp. ¶¶ 17-28). In fact, a review of the authorities relied upon by Defendants confirms this. For example, Defendants cite *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015), for the sound proposition that the 11th Circuit routinely

7

condemns shotgun pleadings, yet they fail to acknowledge that the *Weiland* court provided further guidance on permissible pleadings, and endorses the re-alleging of pertinent paragraphs in subsequent claims. *Id.* at 1324. Notably, the *Weiland* court stated, with respect to the incorporation of paragraphs, "[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Id.*

Defendants do not, and cannot, contend that they do not understand the factual allegations asserted by Plaintiffs. Instead, Defendants attempt to 'unlink' the behaviors and incidents alleged by Plaintiffs, arguing that each is isolated and unrelated, occurring in disparate locations, or sporadically, over an extended period. If, as Defendants maintain, Plaintiffs' factual allegations really are limited to "conclusory, vague and immaterial facts"; their allegations are untethered to specific Defendants; they fail to identify, for each Defendant implicated in any cause of action, which capacity of the Defendant (official or individual) is implicated, then Plaintiffs have done nothing more than avoided a monstrosity of a complaint that would never qualify as *the simple statement of the basis for relief* that is called for by Rule 8(a). In fact, Plaintiffs have accomplished a significant amount of remodeling that goes beyond the requirements of notice pleading--for

instance, the elucidation of each individual Defendant's culpable actions that give rise to their liabilities. (Amend. Compl., ¶¶ 17-28.)

Defendants rely on *Gharfeh v. Carnival Corp.,* 309 F. Supp. 3d 1317 (S.D. Fla. 2018), to support their contention that they are unaware of who Plaintiffs allege caused the harm. However, *Gharfeh* involved a negligence claim for substandard medical treatment aboard a ship and asserted counts for vicarious liability without any underlying causes of action—a markedly different circumstance from the one presented here. Likewise, Defendants rely on *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955 (11th Cir. 2008), which considered the granting of summary judgment to defendants regarding a theory of continuing discrimination under Title VII. The court in *Davis* held that, with respect to the dismissal of individual counts in the complaint, plaintiffs had sufficient knowledge and evidence from other causes in the complaint to include in the individual causes of action. Defendants in the present case do not, and cannot, make a similar claim regarding Plaintiffs' amended complaint.

Defendants also cite *Robbins v. Oklahoma,* 519 F.3d 1242, 1246 (10th Cir. 2008), to argue that Plaintiffs' amended complaint does not "provide each [party] with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250. However, as with prior authorities relied upon by Defendants, the significance of *Robbins* is

misunderstood. *Robbins* is persuasive, but not controlling, authority. Even assuming its holding is of interest to this Court, the case does not provide pertinent guidance on the section upon which Defendants rely.

*Robbins* involves a child who died from alleged mistreatment at a private child care facility, and the surviving parents sued DHS in a complaint that contained vague allegations regarding the connection between the government entity and the private facility, leading to the quoted holding. In contrast, the instant case does not involve a private entity that Plaintiffs claim caused the harm. Here, the harm and injuries to Plaintiff are clearly attributed to governmental entities and their personnel, so it comes with none of the alleged confusion creed by the *Robbins* complaint.

Although Defendants focus on a specific part of *Robbins,* Plaintiffs contend that the case offers more helpful guidance regarding the requirements of a generally sufficient complaint. *Robbins* emphasizes that "[c]ontext matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case...." *Robbins* at 1247 (quoting *Phillips,* 515 F.3d at 231–32). The court further asserts the fundamental principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the grounds that the allegations appear unlikely to be proven. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is

10

very remote and unlikely.'" *Id.* at 1965 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). Thus,'"plausible" does not mean "likely to be true." *Robbins,* 519 F.3d at 1247.

In summary, Plaintiffs' amended complaint puts Defendants on clear notice of who is being sued and the harm that Defendants are alleged to have caused, in the whole sufficient for Defendants to answer intelligently those allegations.

### B.  Plaintiffs Allege Sufficient Facts for EEOA, Title VI and Equal Protection Cl.aims.

#### (1) Applicable Standard

Defendants rely on *Elston v. Talladega Cnty. Bd. of Educ.,* 997 F.2d 1394, 1401 (11th Cir. 1993), to establish the standard for review of these claims. However, Defendants' reliance is again misplaced, as this case involved a decision after a trial on 14th Amendment and Title VI claims, with a standard of review of 'pure error' regarding the trial findings and an 'abuse of discretion' standard regarding the district court's refusal to exercise pendent jurisdiction. Given the procedural posture of *Elston,* plaintiffs presumably had the opportunity for discovery, and the *Elston* defendants necessarily filed a substantive response to the complaint. In the instant case, Plaintiffs have not yet had the opportunity to review Defendants' response or engage in discovery.

Significantly, regarding discriminatory intent, the Court in *Elston* stated: "Discriminatory intent may be established by evidence of such factors as substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and discriminatory statements in the legislative or administrative history of the decision." *Arlington Heights*, 429 U.S. at 265–69, 97 S.Ct. at 563–65. Discriminatory intent may be found 'even where the record contains no direct evidence of bad faith, ill will, or any evil motive on the part of public officials.' *Williams v. City of Dothan, Ala.*, 745 F.2d 1406, 1414 (11th Cir. 1984); Elston at 1406.

Defendants also rely on *Groves v. Alabama State Bd. of Educ.,* 776 F. Supp. 1518, 1519 (M.D. Ala. 1991), without noting that it is not mandatory authority in this jurisdiction and that the case was decided following a trial in favor of plaintiffs on a theory of disparate impact.

In sum, Plaintiffs have alleged sufficient facts at this stage of litigation to establish discriminatory intent. As the case develops, this aspect of the cause of action will likely evolve further.

(2) <u>Analysis - Discriminatory Animus or Deliberate Indifference</u>

Defendants insist that the behaviors Plaintiffs contend in their Complaint are linked and integral to the causes of action should be viewed in isolation, and that, without benefit of an answer from Plaintiffs, or a single deposition or any form of discovery having been taken by Plaintiffs, this Court should deny Plaintiffs the benefit of any inferences from the concrete allegations that they have made in their Complaint. As discussed supra, this is not the appropriate standard to apply at this juncture.

In fact, Plaintiffs have provided numerous allegations in their Complaint that, together with the reasonable inferences that may be taken therefrom, establish a discriminatory animus on the part of the School Board and its officers and other agents. Included among those allegations are the following:

- The response to Coach Carpcioppolo's racist slur. Plaintiffs allege that, instead of addressing the racial dimensions of the Valentine's Day text, Defendants insisted on employing implausible pretext, *i.e.*, that the text was sent to the "wrong group," as if there were a "right group" to which one would address such a text. (Amd. Compl. ¶ 28(c)(ii).) Furthermore, Defendant School Board concluded that the text was not racist. (*Id.* ¶¶ 3, 40A.). Transparent pretext serves to make a discriminatory motive only more plausible. Cf. *Guerriero v. City of Delray Beach*, No. 23-10448, 2024 U.S. App. LEXIS 12175, at *9 (11th Cir. May 21, 2024).

- The routine and permitted use of racial slurs among the baseball team members, which was disclosed to, but not remedied by, the Athletic

Director, coaches and school administration. (Amd. Comp. ¶¶ 18, 29, 31.)

- The targeting of Plaintiff T.R. with fabricated accusations of behavioral violations, when white students were not subjected to such accusations during the same period. (*Id.* ¶¶ 20; 28(a)(ii),(iii); 28(b)(i).)

- Victim blaming. Plaintiff T.R. was cast by Defendants as an instigator or "distraction" that was causing the problems for the baseball team, despite T.R.'s complete non-involvement in the decisions to remove Coach Carcioppolo or Coach Burchfeld. (Id. ¶¶ 19; 28(b)(i),(iii).)

- The deliberate and calculated scheme to leave only the two non-white baseball team members adrift on the baseball diamond during the "walk-out," when only they and their parents were excluded from advance notice about the plan. (*Id.* ¶ 25.) Again, discriminatory motive may be inferred from the purposeful disparate treatment. *Cf. Red Door Asian Bistro v. City of Fort Lauderdale*, No. 22-11489, 2023 U.S. App. LEXIS 22904, at *22 (11th Cir. Aug. 30, 2023) (for equal protection purposes, racial animus may be inferred from disparate treatment).

- Defendants' approval of the obvious result of the "walk-out" for T.R. and the one other non-white team member may be inferred from expressions by certain Defendants of strong approval of the demonstration after the fact. (Amd. Comp. ¶¶ 28(d)(ii), 42.)

- The failure of Defendants School Board, Butz and Bernier to take remedial action that addressed the racial implications of the "walk-out" demonstration. (*Id.* ¶¶ 26, 43, 45.)

Plaintiffs are entitled to the benefit of discovery to flesh out their extant factual allegations, and add others, that will further support their claims, including the claim of racial animus or deliberate indifference. *Cf., e.g., Harper v. Vilsack,* No. 23-22590-CIV-ALTONAGA/Damian, 2024 U.S. Dist. LEXIS 32145, at **7-8

(S.D. Fla. Feb. 26, 2024). Defendants, meanwhile, use their motion to dismiss to deconstruct each factual allegation of Plaintiffs in isolation, so as to obscure the inferences that may reasonably be made based on those allegations as a whole.

Defendants conclude their selective parsing of Plaintiffs' factual allegations by relying on *Scala v. City of Winter Park,* 116 F.3d 1396, 1397 (11th Cir. 1997), a case that involved an appeal of a decision on a motion for summary judgment, not a motion to dismiss the complaint. Moreover, *Scala* involved the termination of an employee, not a pattern of behavior evincing institutional policy. While *Scala* does acknowledge, as Defendants suggest, that when suing a municipality there is often an issue of who made which decisions and what administrative review occurred, Plaintiffs anticipate obtaining additional information through discovery that will clarify these issues. At this point, Defendants are in sole control of all investigations and resulting reports, making it inappropriate to conclude that Plaintiffs' claims are not plausible.

### C. Plaintiffs Have Stated a § 1983 Claim Against the School Board.

Defendants rely on *Barnett v. MacArthur,* 956 F.3d 1291, 1293 (11th Cir. 2020), in support of this section of their motion. However, *Barnett* is another decision on a summary judgment motion and concerns a lawsuit brought by a woman who was detained by state agents for over eight hours, despite a sobriety

test indicating her alcohol level was 0.0. In evaluating her claims regarding the applicable municipal policy, the court stated, "We agree with our sister circuits that under *Monell,* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants." *Speer v. City of Wynne,* 276 F.3d 980, 985–86 (8th Cir. 2002) ("Our court has ... rejected the argument that ... there must be a finding that a municipal employee is liable in his individual capacity as a predicate to municipal liability.... [S]ituations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation."); *Fairley v. Luman,* 281 F.3d 913, 917 (9th Cir. 2002) ("If a plaintiff establishes that he suffered a constitutional injury by the City, the fact that individual officers are exonerated is immaterial to liability under § 1983."); *Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 305 (7th Cir. 2010) ("[A] municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an inconsistent verdict."). *See Barnett* at 1302.

In the present case, Plaintiffs are entitled to discovery to determine the precise role of each actor involved in the culpable acts. However, as held in

*Barnett,* the potential future exoneration of some individuals does not impair the current validity of Plaintiffs' claims.[2]

Furthermore, Plaintiffs have made factual allegations that support bases for municipal liability other than "custom or policy." The actions of an individual Defendant may be attributed to the municipal entity, the School Board, on the basis of other theories of liability, including:

> Act of a Final Policymaker. Municipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The decisions of officials "whose acts or edicts may fairly be said to represent official policy," *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), may therefore give rise to municipal liability under § 1983. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

> Ratification. A municipality may be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes. See *Peguero v. Delaurentos*, No. 11-20069-CIV-JORDAN, 2012 U.S. Dist. LEXIS 203134, at *28 (S.D. Fla. Feb. 14, 2012) (county "may be held liable for a constitutional tort when policymakers have had the opportunity to review subordinates' decisions before they become final"); *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1174 (11th Cir. 2001)..

---

[2] Defendants also rely on *Board. Beck v. Littlefield*,  68 So.2d 889 (Fla. 1953) for the proposition that a municipality speaks through its official actions and minutes. Plaintiffs are unable to determine the applicability of this case to the contentions made. Defendants also state the following, "*Barnett  v. MacArthur,* 956 F.3d 1291, 1296 (11th Cir. 2020) (A municipality can only be sued directly under § 1983 when one of its customs,....")) (Def. Motion, p.12.) Plaintiffs are unsure of the relevance of the "customs" referenced.

Delegation. Even if the individual lacks final policymaking authority to bind the municipality, the municipality may be liable if it delegates to the individual the authority to act, or if it acquiesced to the unconstitutional conduct. *See, e.g., Rizk v. Pugh*, No. 6:18-cv-1414-PGB-GJK, 2022 U.S. Dist. LEXIS 246579, at *5 (M.D. Fla. Aug. 19, 2022) (municipal entity may have "supervisory liability" where final policymaker delegates final policy making authority concerning the subject matter of the alleged violation to the ultimate actor).

Plaintiffs have included in their complaint factual allegations about the unconstitutional acts of individual Defendants that may be attributed to Defendant School Board based on one or more of the aforementioned theories. (Amd. Comp. ¶ 28.). Only with the benefit of discovery will Plaintiffs be in a position to elaborate on the specific roles played by each of the individual Defendants. For now, it is required only that Plaintiffs have made it plausible that there is a route available to municipal liability.

### D. Plaintiffs Have Alleged Sufficient Facts to State Valid Claims Against the Individual Defendants.

Defendants rely on *Kentucky v. Graham,* 473 U.S. 159, 162, 105 S. Ct. 3099, 3103 (1985), for the proposition that a suit against government officials in their official capacity is a suit against the governmental entity. However, the issue in that case was whether fees can be recovered from a governmental entity when a plaintiff prevails in a suit against government employees in their personal capacities. *Id.* at 163. Defendants also rely on *Busby v. City of Orlando,* 931 F.2d

764 (11th Cir. 1991), which involves an appeal on a directed verdict after a trial. Plaintiffs are entitled to discovery to determine the nature of the Defendants' participation in the actions described in their amended complaint. *See also* Part IV.C., *supra*.

### E. Whether Individual Defendants Are Entitled to Qualified Immunity Is Not Determinable at This Stage of the Litigation.

Defendants rely on *Corn v. City of Lauderdale Lakes,* 997 F.2d 1369 (11th Cir. 1993), to contend that the individual Defendants are entitled to immunity. However, that case clearly states that qualified immunity is a defense—one properly raised in an answer to Plaintiffs' complaint—and remands the lower court for further evaluation of that issue. See also *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727 (1982), which is also cited by Defendants and discusses the defense of qualified immunity. [3]

Plaintiffs are compelled to point out that, in this section, Defendants mistake and misconstrue the allegations in the amended complaint regarding Stephan Cato. Defendants claim that the fact alleged in Plaintiffs' amended complaint—that he called the police prior to the walkout of all white players and

---

[3] Defendants also rely on *Rich v. Dollar,* 841 F.2d 1558, (11th Cir. 1988), another case decided later in the litigation after the raising of qualified immunity as a defense. In deciding an appeal of the lower court's decision on a motion for summary judgment, the Court appropriately noted that plaintiff could no longer rely on allegations found in his complaint. In the instant case, Plaintiffs can only rely on their allegations because defendants have not raised the defense of qualified immunity.

administration—indicates that he "took active steps to stop the walkout and address any repercussions by calling law enforcement." (Def. Brf., p. 18.)

However, Plaintiffs' amended complaint alleges that Cato, a school administrator, had prior knowledge of the walkout, as evidenced by his statement, "[W]e knew the 'walkout' was going to be bad but we didn't know how bad, that's why we called the police," which was captured on police body cam audio. (Amd. Comp. ¶ 28(a)). From that statement it is reasonable to infer that Cato was involved in planning the walkout, which left the two students of color alone on the field and, consequently, negatively affected their recruitment opportunities with college scouts. The complaint further details how "Plaintiff T.R. and another student-athlete of color were left standing alone on the field, while the other players and adults entrusted with their care deliberately walked off" (Amd. Comp. ¶ 25). This discriminatory action was witnessed by recruiters and scouts, further hindering T.R.'s future opportunities. (*Id.*)

This misrepresentation by Defendants of the facts embedded in Plaintiffs' amended complaint is wholly inappropriate in a motion to dismiss. As stated *supra*, the appropriate standard requires the opposite—that all alleged facts be interpreted in the light most favorable to Plaintiffs, the nonmoving parties.

### F. Plaintiffs Have Stated a Sufficient EEOA Claim Under Section 1703.

Defendants rely on *Jackson v. Waller Indep. Sch. Dist.,* No. H-07-3086, 2009 WL 3078489, at \*14 (S.D. Tex. Sept. 24, 2009), a case involving challenges to school bonds and their distribution, which was before the court on a motion for summary judgment. Once again, Defendants rely on non-controlling authority without explaining why this Court should adopt the reasoning of the District Court for the Southern District of Texas. In *Jackson*, the court noted that the plaintiffs did not request discovery on the EEOA claim. Plaintiffs in the instant case, however, fully expect to engage in discovery.

Additionally, contrary to Defendants' assertions, Plaintiffs have alleged that the February 14th text resulted from pervasive, unresolved discrimination perpetuated by Defendants. The Amended Complaint specifies that this text message, which stated "Happy Valentine's Day niggas," exacerbated racism among team members, leading to unjust blame being placed on Plaintiff T.R. by white athletes (Amd. Comp. ¶ 18). Plaintiffs further allege that Plaintiff T.R.'s higher educational opportunities, as well as advanced athletic opportunities, were curtailed by the pervasive discrimination he endured, which included "racial slurs, ostracism, and manufactured disciplinary violations" (Amd. Comp. ¶¶ 19-22, 33). Once again, Defendants 'cherry-pick' the factual allegations in Plaintiffs' amended

21

complaint and erroneously contend that the only harm alleged was the cancellation of the baseball season. In fact, the complaint details that the walkout orchestrated by coaches, which left T.R. and another student of color isolated on the field, negatively impacted T.R.'s opportunities with college scouts who were present at the game (Amd. Comp. ¶¶ 25-27). Accordingly, Plaintiffs submit that their amended complaint adequately sets forth a cause of action for violation of Section 1703.

### G. Plaintiffs Have Adequately Alleged the Unconstitutional Deprivation of Plaintiffs' Property Interest Under the Fourteenth Amendment in Violation of 42 U.S.C. § 1983.

Plaintiffs have adequately alleged a due process violation. Defendants rely on *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973) to contend that because the Supreme Court held that there is no fundamental right to an education under the Constitution, there is no due process claim allowable here. Defendants misconstrue Plaintiffs' claims once again. Once a public school or school district makes a decision in the educational setting based on race or color, as alleged in Plaintiffs' amended complaint, the scrutiny to be applied to such decision rises to a higher level. Plaintiffs are not contending, as Defendants suggest, that the decision to cancel a baseball season is the central controversy between Plaintiffs and Defendants. Rather, as detailed in Plaintiffs' amended

22

complaint, the cancellation of the baseball season was both a symptom and a catalyst of the disparate treatment of T.R. and his parents on the basis of color.

### H. Plaintiffs' Pendent State Claims

(1) <u>Plaintiffs have sufficiently stated claims of violations of FEEA (Count V) and Article IX of the Florida Constitution  (Count VI).</u>

Yet again, Defendants mistake Plaintiffs' amended complaint, insisting that the only harm claimed is the cancellation of the remainder of the baseball season. As detailed *supra,* the cancellation of the season is part of Plaintiffs' claim, but certainly not the entirety of it. Beyond misrepresenting the facts as alleged in Plaintiffs' amended complaint, Defendants provide no legal authority to support their contentions.

(2) <u>This Court has jurisdiction over Plaintiffs' battery claim.</u>

The subject matter alleged in Plaintiff's battery claim clearly arises from the same nucleus of facts as the remainder of Plaintiffs' complaint—the battery incident was another occasion in the pattern of discrimination alleged herein.  It is unsurprising that Defendants provide no reference for their contention that Defendant Burchfield is entitled to sovereign immunity. It is axiomatic that sovereign immunity applies to the state (the sovereign entity), not to individuals. As Burchfield, to the best of Plaintiff's knowledge, is not a state entity, this claim must fail. See *Chapman v. Dunn*, 2023 U.S. Dist. LEXIS 22252. venth

23

Amendment, which prohibits federal courts from entertaining suits by private parties against states and their agencies or employees unless the state has waived its immunity or Congress has abrogated that immunity <u>Chapman v. Dunn</u>, 2023 U.S. Dist. LEXIS 22252.

Finally, with respect to Defendants' claim that Count VII violates this Court's Order permitting amendment, Plaintiff notes that at the time of the filing of Plaintiff's amended complaint, Defendants had not yet entered an appearance and therefore suffered no disadvantage by the addition of the count. Plaintiff also notes that although Defendants' document is titled 'Motion to Dismiss In the Alternative for a More Definite Statement,' Defendants make only one reference to a request for a more definite statement in their motion.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss in its entirety, or in the alternative, their motion for a more definite Statement.

**September 11, 2024**                                              Respectfully submitted,


   ***/s/ Joseph W. Montgomery***
Joseph W. Montgomery, Esq.
FL Bar No: 120569
Montgomery Law Group PLLC
631 U.S. Highway 1
Suite 202
North Palm Beach, Florida 33408

***/s/ Kathy Smith***
Kathy Smith, Esq.
Pro Hac Vice
Montgomery Law Group, PLLC
631 U.S. Highway 1, Suite 202
North Palm Beach, Florida 33408

***Attorneys for Plaintiff***

25

## CERTIFICATE OF SERVICE

I hereby certify that onSeptember 11, 2024, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: September 11, 2024

**/s/ Joseph W. Montgomery**

Joseph W. Montgomery, Esq.
Florida Bar No. 120569
Montgomery Law Group, PLLC
631 U.S. Highway 1, Suite 202
North Palm Beach, Florida 33408