UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 24-00321-CIV-ALTONAGA/Reid

**T.R.**, *et al.*,

    Plaintiffs,

v.

**THE SCHOOL DISTRICT OF LEE COUNTY, FLORIDA**; *et al.*,

    Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, the School District of Lee County Florida; the School Board of Lee County, Florida; Stephen Cato; Kyle Burchfield; Alex Carcioppolo; Robert Hinson; Christopher Chappell; Robert Butz; and Christopher Bernier's Motion to Dismiss [ECF No. 40]. Plaintiffs, T.R., Melanie Reilly, and Shane Reilly, filed a Response [ECF No. 52]; to which Defendants filed a Reply [ECF No. 55].[1] The Court has considered Plaintiffs' First Verified Amended Complaint, the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

### I. BACKGROUND

This case arises from a series of incidents of racial discrimination and hostility that took place at Fort Myers High School. (*See generally* Am. Compl.). On February 14, 2023, Carcioppolo, Coach of the school's baseball team, sent a text message to the team and staff containing a racial slur. (*See id.* ¶¶ 2, 17). Plaintiff T.R. and another minor child, M.T., were the

---

[1] While Defendants lament that "Plaintiffs styled the entirety of their lawsuit as parents suing on behalf of their minor son," who as of May 2024, is not a minor (Reply 1), T.R.'s parents are also Plaintiffs in the case in their personal capacities. (*See generally* Am. Compl. [ECF No. 10]).

only two students of color on the team. (*See id.* ¶ 2). "This incident exacerbated racism among team members, leading white athletes to unjustly falsely blame T[.]R[.] and [M.T.] for reporting the incendiary text to school authorities." (*Id.* ¶ 18 (alterations added)).

Other students told the Athletic Director, Cato; Coaches, Carcioppolo, Hinson, Chappell, and Burchfield; and the school administration, Principal Butz and Superintendent Bernier, that "racial slurs were routinely used among team members." (*Id.*). Students and their parents harassed T.R. and his parents, directing racially charged comments toward them and socially ostracizing them at games and other team events overseen by the School District. (*See id.* ¶¶ 21–23). Defendants allegedly permitted the other parents to "sponsor team events privately" rather than through a school-operated mechanism to "obscure the discrimination" and allowed the parents to "intentionally exclud[e]" T.R.'s parents from team events. (*Id.* ¶¶ 22–23 (alteration added)). Students also fabricated a story that T.R. "expressed a desire to fight another student" in an apparent attempt to get him in trouble. (*Id.* ¶ 21).

Responding to these continued "incidents, issues, and complaints[,]" Principal Butz removed Coach Burchfield from his coaching duties on April 5, 2023. (*Id.* ¶ 24 (alteration added)). Tensions erupted at a baseball game the following day. (*See id.* ¶ 25). At the game, where college scouts and recruiters were expected to attend, "Defendants, FMHS coaches,[2] staff, students, and other parents planned a 'walkout' to protest [Coach Burchfield's] removal." (*Id.* (alterations added)). After the walkout, the remaining games of the season were cancelled; T.R. and the other student athlete of color, M.T., were left "isolated . . . amidst racist rhetoric[,]" causing all Plaintiffs anxiety and distress. (*Id.* ¶ 27 (alterations added)). Plaintiffs critique the decision to remove

---

[2] Plaintiffs do not clearly state which Defendants were involved, but they do state Coaches Hinson and Chappell participated. (*See* Am. Compl. ¶ 25).

Burchfield as an "'isolation' approach to the systemic racism evident at the school," taken to avoid "investigating the [school's] culture of racism[.]" (*Id.* ¶ 24 (alterations added)).

On February 14, 2024, M.T.'s parents filed suit on his behalf against the same Defendants named in this case, asserting Defendants' violations of the Equal Educational Opportunities Act of 1974 ("EEOA"), 20 U.S.C. section 1703; Title VI of the Civil Rights Act of 1964, 42 U.S.C. section 2000d; the Equal Protection and Due Process Clauses of the Fourteenth Amendment through 42 U.S.C. section 1983; the Florida Educational Equity Act, Fla. Stat. section 1000.05 *et seq.*; and Article IX of the Florida Constitution. (*See Tucker v. The Sch. Dist. of Lee Cnty.*, No. 24-cv-00142, Complaint [ECF No. 1] ¶¶ 27–63, filed February 14, 2024 (M.D. Fla. 2024)). Two months later, T.R. and his parents filed this case, asserting similar claims derived from the same series of events. These same Defendants moved to dismiss the *Tucker* case on July 1, 2024. (*See id.*, Mot. to Dismiss [ECF No. 47], filed July 1, 2024 (M.D. Fla. 2024)).

Defendants filed this, substantially similar — indeed, nearly identical — Motion to Dismiss in the present case on August 2, 2024. (*Compare id.*, *with* Mot.). Defendants raise one additional argument here that they did not make in the *Tucker* case: that the individual Defendants are protected by qualified immunity. (*See* Mot. 17, 21–23).

To avoid inconsistent results in parallel proceedings, the Court denies without prejudice all parts of the Motion overlapping with the earlier-filed motion to dismiss pending in *Tucker v. School District of Lee County*. *See id.*, Mot. to Dismiss, No. 24-cv-00142 (M.D. Fla. 2024). After the motion to dismiss in *Tucker* is decided, Defendants may refile their motion here, if necessary. In this Order, the Court considers only the argument unique to this case — the individual Defendants' qualified immunity defense.

3

## II.  LEGAL STANDARD

Qualified immunity protects government officials[3] "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (alteration added) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To be entitled to qualified immunity's protections, a government official must first demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quotation marks and citations omitted).  When a defendant acts within the scope of his discretionary authority, the burden "shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted), *abrogated in part on other grounds by Pearson*, 555 U.S. 223; *see also Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).  A plaintiff can show qualified immunity is not appropriate by establishing that (1) the defendant's conduct violated plaintiff's constitutional rights; and (2) the constitutional violation was clearly established at the time. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and citations omitted).  These two requirements may be addressed in any order. *See id.* (citing *Pearson*, 555 U.S. at 236).

The plaintiff "bear[s] the burden of showing that the federal rights allegedly violated were clearly established." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (alteration added;

---

[3] Plaintiffs do not dispute the individual Defendants are all government officials.  (*See generally* Resp.).

4

citation omitted). To satisfy the "clearly established" requirement, a law may not be "defined 'at a high level of generality[,]'" and the "clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (alteration added; citations omitted). There are three ways a plaintiff may show a right is clearly established:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (quotation marks and citation omitted).[4] Even if the plaintiff demonstrates that, at a general level, a clearly established right may be at stake, the necessary particularization requires the Court to examine "whether the defendant's conduct was nonetheless objectively reasonable in light of that [clearly established] right." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1283 (11th Cir. 2008) (alteration added; citation omitted).

### III. ANALYSIS

Defendants argue the individual Defendants "enjoy qualified immunity" and should be dismissed. (Mot. 21). Although Defendants do not specify which claims they defend on the basis of qualified immunity, the Court evaluates the defense only with respect to Plaintiffs' federal claims against the individual Defendants, Counts III and IV, as "[q]ualified immunity is a defense to federal causes of action and does not protect officials from claims based upon state law." *Andreu v. Sapp*, 919 F.2d 637, 640 (11th Cir. 1990) (alteration added). Count III is a claim of race-based discrimination, brought under the Equal Protection Clause of the Fourteenth Amendment; and Count IV is a claim of deprivation of property interest, brought under the Due Process Clause of

---

[4] In the Eleventh Circuit, if case law is used, only decisions of the Supreme Court, Eleventh Circuit, and the pertinent state's highest court — here, the Florida Supreme Court — can clearly establish the law for qualified immunity purposes. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (citation omitted).

5

the Fourteenth Amendment. (*See* Am. Compl. ¶¶ 58–69). Plaintiffs insist Defendants "misrepresent[] . . . the facts" in the Amended Complaint and qualified immunity does not apply. (*See* Resp. 20 (alterations added)).

According to Defendants, each of the individual Defendants acted within their discretionary duties, as follows:

- "for Superintendent Bernier, implementing school policies;"

- "for Principal Butz, removing coaches and canceling the baseball season;"

- "for Athletic Director Cato, being present at a park during an athletic event . . . ;"

- "for teacher and Coach Hinson, being present at a park during an athletic event and reporting student conduct;" and

- "for Coach Burchfield, monitoring player and safety conduct during athletic events, removing players from games, and reporting student conduct."

(Mot. 22–23 (alterations added)).

Notably, and dooming their argument as to all individual Defendants, Defendants fail to extend this analysis or make any other showing that the other Coaches, Carcioppolo and Chappell, were acting within their discretionary duties.[5] (*See generally id.*). Given this, Defendants fail to carry their burden on this prong as to Defendants Carcioppolo and Chappell, and these Defendants are thus not protected by qualified immunity at this stage.

Plaintiffs fail to respond to this portion of Defendants' argument regarding the other five individual Defendants, and the Court therefore finds those Defendants have carried their burden of showing they acted within their discretionary duties. (*See generally* Resp.); *see, e.g., Kubany v. Sch. Bd. of Pinellas Cnty.*, 839 F. Supp. 1544, 1550 (M.D. Fla. 1993) (stating a principal's

---

[5] Remarkably, Defendants fail to address whether Coach Carcioppolo was acting within his discretionary duties, even though it was his text message that kicked off the course of events giving rise to this and the *Tucker* actions.

"implementing" of the "[c]ode of [s]tudent [c]onduct so as to maintain discipline at all school functions" is a discretionary function (alterations added)); *Davis v. Carter*, 555 F.3d 979, 981 n.1 (11th Cir. 2009) (stating it was "undisputed" that school coaches acted in their discretionary authority during a football practice); *J.V. v. Seminole Cnty. Sch. Bd.*, No. 04-cv-1889, 2007 WL 7261470, at *7 n.14 (M.D. Fla. Mar. 21, 2007) (stating "[d]isciplining children certainly falls within the job description of a teacher, and so discipline is usually a discretionary function entitling the teacher to raise the qualified immunity defense" (alteration added; citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–67 (11th Cir. 2004))).

Moving on to prong two of the qualified immunity analysis, Plaintiffs bear the burden to "establish that the [D]efendant[s] violated clearly established law." *Harbert Int'l v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (alterations added; citation omitted). Defendants cursorily state Plaintiffs fail to plausibly allege any "facts of a violation of clearly established laws[.]" (Mot. 23 (alteration added)). Certainly, a plaintiff must explain why and how defendants' conduct violated clearly established law. "[I]t is insufficient for a plaintiff to simply identify a clearly established right in the abstract and allege that a defendant has violated it." *Niziol v. Pasco Cnty. Dist. Sch. Bd.*, 240 F. Supp. 2d 1194, 1212 (M.D. Fla. 2002) (alteration added).

Plaintiffs' Response does nothing more than just that. (*See* Resp. 19–20). The Response contains only a brief, two-page rebuttal to the individual Defendants' qualified immunity defense. (*See id.*). Plaintiffs' main argument is that qualified immunity is inappropriate for consideration on a motion to dismiss. (*See id.*).[6]

---

[6] As a separate point, Plaintiffs contend Defendants misconstrue the allegations regarding Cato, and reiterate that Cato was involved in planning the walkout that Plaintiffs allege violated several of Plaintiffs' rights. (*See* Resp. 19–20). The Court does not question this factual contention. Plaintiffs do not, however, address qualified immunity as to any of the individual Defendants, nor do they explain which rights they claim are clearly established. (*See generally id.*).

Unfortunately for Plaintiffs, qualified immunity may be raised by defendants and addressed on a motion to dismiss. *See St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (explaining that "[w]hile the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss" (alterations added; citation omitted)). The individual Defendants are "entitled to qualified immunity at [the motion to dismiss] stage in the proceedings if [Plaintiffs'] [A]mended [C]omplaint fails to allege the violation of a clearly established constitutional right." *Williams v. Ala. St. Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (alterations added; citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); other citation and footnote call number omitted)).

Plaintiffs fail to even attempt to explain how the alleged acts violate clearly established law under *any* method. (*See generally* Resp.); *see also Perez*, 809 F.3d at 1222. Plaintiffs' Response is completely devoid of citations to authority regarding whether conduct in materially similar cases violated clearly established law. (*See generally* Resp.). True, if there is no case law directly on point, "broader, clearly established principle[s]" may control. *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (alteration added; quotation marks and citation omitted). But "the principle must be established with 'obvious clarity' by the case law so that 'every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" *Id.* at 1256 (quotation marks and citation omitted). Such an obvious principle is not identified in Plaintiffs' Response; nor is it alleged in the Amended Complaint. (*See generally* Resp.; Am. Compl.).

Plaintiffs' relevant claims here are brought under the "broad command" of the Fourteenth Amendment, which "operate[s] at too high a level of generality" to provide the individual Defendants with fair warning that their conduct was unlawful. *Griffin Indus., Inc. v. Irvin*, 496

8

F.3d 1189, 1209 (11th Cir. 2007) (citation omitted)). Plaintiffs make no attempt to argue the Amendment's "general principle[s]" are "specific enough to give the [Defendants] notice of the clearly established right[s]." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (alterations added).

Plaintiffs leave the Court without any analysis or explanation why the allegedly violated clearly established rights were apparent enough to put Defendants on notice that their behavior ran afoul of federal laws. (*See generally* Am. Compl.; Resp.). The fact that actions are morally reprehensible cannot, without more, establish a rebuttal to a qualified immunity defense. Because Defendants meet their initial burden of demonstrating the individual Defendants — with the exceptions of Carcioppolo and Chappell — acted in the scope of their discretionary duties, the Court is in no position to deny those five individual Defendants' qualified immunity defense to Counts III and IV.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss **[ECF No. 40]** is **GRANTED in part** as to Counts III and IV against Defendants, Cato, Burchfield, Hinson, Butz, and Bernier only; and **DENIED in part, without prejudice**, as to all other Counts and Defendants. The case is **STAYED** pending a decision on the earlier-filed motion to dismiss in *Tucker v. The School District of Lee County*, 24-00142 (M.D. Fla. 2024). Upon resolution of that motion, the parties shall confer to address which claims, defenses, and parties remain in this action. After conferral, and no longer than **twenty-one (21) days** after the resolution of the *Tucker* motion to dismiss, the parties may file a motion to reopen the case, accompanied by a joint scheduling report. Defendants may refile their motion to dismiss within **fourteen (14) days** of the case being reopened.

9

CASE NO. 24-00321-CIV-ALTONAGA/Reid

**DONE AND ORDERED** in Miami, Florida, this 2nd day of October, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**
**SOUTHERN DISTRICT OF FLORIDA**

cc:    counsel of record